THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LONNIE ARSBERRY, Defendant-Appellant.

First District (4th Division)   No. 1—90—3616

Opinion filed March 4, 1993.

Rita A. Fry, Public Defender, of Chicago (John T. Kennedy, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Barbara Jones, and Joseph Alesia, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a trial by jury in the circuit court of Cook County, defendant, Lonnie Arsberry, was convicted of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2) and two counts of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4). He was sentenced to 60 years'

imprisonment for the armed robbery conviction and to concurrent five-year terms for each aggravated battery conviction, to be served consecutively to the armed robbery term.

On appeal, defendant contends that (1) he was not tried within 120 days of his arrest; (2) he was erroneously convicted of aggravated battery because the requisite statutory mental element was not proved; (3) the prosecutor made prejudicial and improper remarks during closing argument; and (4) the trial court abused its discretion in dismissing defendant's petition for discharge without making specific findings of fact.

We affirm.

The following facts were adduced at trial. Deborah Garr, former manager of the Payless Shoe Store at 1935 Mannheim Road in Melrose Park, testified that she was working at the store on October 10, 1989, at 2 p.m. She stated that she went to greet a customer at the front of the store when he ordered her and a co-worker, Caroline Bartlett, to go to the back of the store. The women did not move and the man pulled out a gun. He repeated his demand and they complied.

Garr heard another voice at the front of the store instructing someone to "get the manager." She immediately headed toward the front of the store while the other man continued to point the gun at her. She walked until she stood directly in front of the man who demanded the manager. She identified this man as defendant.

Defendant handed the gunman a "brownish looking" bank bag and told him to get the money. Defendant then went to the back of the store and told Caroline Bartlett to "get on the floor." The gunman directed Garr to the cash register and ordered her to open it. She opened the register and he reached in and took all the cash except the $1 bills. The gunman then told her to open the safe behind the front counter. He emptied the safe while holding the gun to Garr's head.

The gunman then walked Garr to the back of the store, nudging her with the gun. At the back of the store she saw Bartlett and the two were ordered to lie on their stomachs. Defendant and the gunman fled the scene, and Garr immediately called the Melrose Park police department. She told police that the men were driving a new, blue Chevrolet Corsica and were traveling south on Mannheim.

Later that afternoon, Garr and Bartlett went to the Melrose Park police department to view a lineup. Garr identified both defendant and the gunman. She also identified the bank bag containing the stolen cash and other items. Bartlett corroborated Garr's testimony.

Officer Frank Esposito, a patrolman with the Stone Park police department, testified that, on October 10, 1989, he received a dispatch from the Melrose Park police department. He was informed of an armed robbery at the Payless Shoe Store in Melrose Crossing. The dispatch provided a description of the offenders, a description of the vehicle in which they were traveling, and the direction in which they were going.

After receiving the dispatch, Officer Esposito exited the police station and observed a late model, blue Chevrolet Corsica traveling southbound in front of the station. He got into his squad car, followed the Corsica and stopped directly behind it at the intersection of Lake and Mannheim Roads. He observed that the car had Ohio plates and radioed the information to the station. He then turned on his headlights and trailed the vehicle. He pointed to the curb, indicating that the driver should pull over. The vehicle appeared to be pulling over and then accelerated quickly, proceeding eastbound on St. Charles Road.

Officer Esposito continued to pursue the car, activating his siren and his mars lights. At this point, he saw another occupant in the car. He said the car was traveling in excess of 60 miles per hour and he followed it for approximately 10 to 15 blocks.

The car veered onto the curb at 19th Avenue and St. Charles Road, hitting the base of a stoplight. It continued eastbound on the sidewalk about 100 feet, heading into a crowd of people. While driving past the southeast corner of that intersection, he saw one person on the ground and a woman on the hood of the car, which sped away at about 60 miles per hour. He stated that the car traveled about 14 blocks at speeds of between 60 and 70 miles per hour, with the woman on the hood. It eventually hit a railroad sign and some cement pillars on 4th Avenue.

The officer observed the woman fall off the car and saw defendant and the gunman exit the car. Officer Piemonti, also of the Melrose Park police department, proceeded to chase defendant, ordering him to stop. Defendant failed to obey this direction. Maywood police officer Chris Brown finally stopped defendant, and Officer Piemonti handcuffed him and brought him back to 4th Avenue. There he observed a brown bag in defendant's car. Officer Brown testified that he pursued the car and chased and arrested the gunman.

Patrice Williams testified that on the afternoon of October 10, 1989, she and her boyfriend, Ryan Gwin, were on the southeast corner of 19th Avenue and St. Charles Road. She stated that a car struck Gwin on the left side while they were standing on the sidewalk. As

she observed Gwin, she was hit and flew onto the hood of the car. Williams then saw the driver and another man leaning down in the back seat.

After she landed on the car, it accelerated and proceeded down St. Charles Road. She remained on the hood of the car with her face pressed against the windshield. She was crying and begging the driver to stop the car. She testified that defendant never said anything, continued to drive the car, and looked around her body so he could see the road.

Williams was thrown off the car at 4th Avenue and St. Charles Road. She sustained a broken left wrist, a broken left ankle, a two-inch scar on her head, and numerous abrasions.

Ryan Gwin testified to similar facts. He stated that before driving off with Williams on the hood, the car struck his leg, pinning it between the car and a building. He fell onto his back and the car sped down the street. His resulting injuries include a fractured ankle, stitches in his left elbow, and mass abrasions on his back. Presently, he walks with a limp.

After both sides completed closing arguments, the jury convicted defendant of armed robbery and two counts of aggravated battery. He was sentenced to 60 years' imprisonment for the armed robbery conviction and to concurrent five-year terms for each aggravated battery conviction, to be served consecutively to the armed robbery term. Defendant now appeals his conviction.

■ Defendant initially argues that he was not brought to trial within 120 days of his arrest in violation of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 103—5(a)). The statutory provision is as follows:

"§103—5. Speedy trial. (a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***." Ill. Rev. Stat. 1987, ch. 38, par. 103—5(a).

Defendant was arrested on October 10, 1989, and his trial began on October 16, 1990. The case was originally set for trial on July 9, 1990, and defendant does not contest any days between that date and the actual trial date. Consequently, we confine our examination to the period between October 10, 1989, and July 9, 1990, in determining the delays for which defendant is held accountable.

Defendant appeared in court on October 11, 1989, the day immediately following his arrest. The case was continued until October 16, 1989. On this day, defendant expressly consented to a continuance un-

til October 23, 1989, as his lawyer was not present. On the 23rd, defendant still did not have a lawyer and requested "8 or 9 days" to ensure the presence of counsel and the court granted him one week. "A delay is considered 'occasioned by the defendant' if his acts have caused or contributed to actual delay (*People v. Donalson* (1976), 64 Ill. 2d 536), or where he has expressly agreed to a continuance on the record." (*People v. Brown* (1988), 170 Ill. App. 3d 273, 284.) The record clearly illustrates that these initial two delays described above are unequivocally attributable to defendant.

On October 30, 1989, the record shows a "by agreement" continuance until November 13, 1989. On the 23rd, defendant was granted a continuance in order to secure a lawyer, and by the 30th he still had no representation. The continuance until the 13th of November resulted from defendant's continued lack of counsel. Defendant's statement that he was ready to proceed with the public defender is of no import. Previously, he had given the impression that he was in the process of securing private counsel and that on October 30, 1989, counsel would be present to represent him. The proceedings on the 30th reflect the continued absence of counsel which necessitated the delay until November 13, 1989. This delay is occasioned by defendant. On the 13th, the State had a motion to supersede with indictment and requested a three-week date for arraignment. December 4, 1989, was set by order of the court, and this period is chargeable to the State.

On December 4, defendant made a motion for substitution of judges which was sustained and the case was assigned to another judge. The court then ordered a "by agreement" continuance until December 8, 1989, and these days are not disputed by defendant. On December 8, defendant requested that his case be severed from that of his codefendant and asked for another substitution of judges. The case was continued until December 12 so the State could research the law pertaining to the allowable number of substitution of judges. "A delay chargeable to a defendant encompasses not only the time period required to hear a motion, but also the additional time necessary to implement the relief requested." (*People v. Helton* (1987), 153 Ill. App. 3d 726, 730.) Defendant's motion for a second substitution of judges engendered the State's need for time to research the law. Therefore, although the continuance was requested by the State, it is the immediate consequence of defendant's motion and is accordingly not attributable to the State.

On December 12, 1989, defendant's substitution of judges motion was granted and the court said it would determine who would hear the case. Prior to this date, the record indicates an agreement to continue the case until December 19 for the filing of discovery. Defendant is

bound by acts of counsel (*People v. Clay* (1981), 98 Ill. App. 3d 534, 541), although his assent to the continuance was not specifically manifested. On December 19, defense counsel explicitly consented to a continuance until January 3, 1990. "When the defense counsel verbally indicates to the trial court that he or she is agreeable to a continuance, he or she has been held to cause or contribute to any delay." (*People v. Brown* (1988), 170 Ill. App. 3d 273, 284; see *People v. Jarnagan* (1987), 154 Ill. App. 3d 187.) This delay is therefore occasioned by defendant.

On January 3, 1990, defense counsel requested one additional status date, rejecting the proposed setting of a trial date. He expressly agreed to continue the case until January 24, 1990. On January 24, defense counsel, who consistently had been the public defender, requested a "motion defendant" until February 16, 1990, so defendant could secure private counsel. Defendant is responsible for this delay.

The next three dates, December 16, 23, and 28, defendant failed to appear in court as he was in Federal custody. This term inclusive of the above dates is not charged to defendant. The 120-day statutory period does not run while the defendant is in the custody of the Federal government. (*People v. Neumann* (1986), 148 Ill. App. 3d 362, 368.) On February 28, 1990, defense counsel, still the public defender, asked the court to "hold on call March 9, 1990." "[A]ny delays occasioned by defense counsel are attributed to the defendant ***." (*People v. Clay* (1981), 98 Ill. App. 3d 534, 541.) Defendant is accountable for this period.

On March 3, 1990, defense counsel stated that he intended to file a motion for severance and agreed to March 13, 1990, for a hearing on that motion. "A defendant cannot escape responsibility for delay where his action caused the rescheduling." (*People v. Paulsgrove* (1989), 178 Ill. App. 3d 1073, 1077.) On March 13, defense counsel responded "sure" in his consent to continue the case until April 2, 1990. "[An] affirmative act [causing a delay] may be manifested as an express agreement to a continuance on the record." (*People v. Reimolds* (1982), 92 Ill. 2d 101, 106; see *People v. Cunningham* (1979), 77 Ill. App. 3d 949.) As previously established and illustrated, defendant is bound by acts of his counsel, and this delay is attributable to him.

On April 2, 1990, defense counsel requested a continuance to April 16 for a hearing on his motion for discovery. The next date on the record is April 25, 1990. This delay was evidently due to a scheduling misinterpretation involving the trial judge. On the 25th, defense counsel agreed to continue the case until May 1, 1990, for a hearing on his motion for severance. "A defendant is considered to have occa-

sioned a delay when he requests a continuance, agrees to a continuance, or when his actions otherwise cause or contribute to a delay." (*People v. Grayson* (1988), 165 Ill. App. 3d 1038, 1041.) The period between April 25 and May 1 is chargeable to defendant.

Finally, on May 1, 1990, the motion for severance was heard and the trial court stated that it would rule on the motion on May 7, 1990. "Delays occasioned by a defendant's own motions *** have been held to be delays attributable to the defendant." (*People v. Helton* (1987), 153 Ill. App. 3d 726, 731.) The period between the hearing on the motion and the ruling on the motion is one for which defendant is responsible. The record is silent as to May 7, 1990.

Thereafter, on May 8, 1990, defendant's motion to sever was granted and defense counsel indicated his intention to file motions by June 8, 1990. Also on May 8, a trial date was set for July 9, 1990. This concludes the disputed days.

"A court of review must determine the issues before it solely on the basis of the record made in the trial court." (*People v. Reimolds* (1982), 92 Ill. 2d 101, 106-07.) Although the record fails to reflect the express articulation of the party responsible for the delay in each instance, we believe defendant's actions contributed almost habitually to every delay. "Defendants carry the burden to affirmatively establish a violation of the right to a speedy trial, and delays attributable to a defendant toll the statutory period." (*People v. Grayson* (1988), 165 Ill. App. 3d 1038, 1041.) Defendant has resoundingly failed to satisfy this burden. His postulation as to this issue, attributing 167 days of delay to the State, taken in context with the above evaluation of the proceedings, is nothing short of inconceivable.

■ Defendant next contends that he was erroneously convicted of aggravated battery because the State failed to prove the necessary statutory elements of intentionally or knowingly. We disagree.

The relevant statute as to mental state provides:

"§4—4. Intent. A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct." Ill. Rev. Stat. 1987, ch. 38, par. 4—4.

"§4—5. Knowledge. A person knows, or acts knowingly or with knowledge of:

***

(b) The result of his conduct, described by the statute defining the offense, when he is consciously aware that such result

is practically certain to be caused by his conduct." Ill. Rev. Stat. 1987, ch. 38, par. 4—5.

The facts are incontrovertible. Defendant, traveling in dangerous excess of the speed limit, drove onto the sidewalk at 19th Avenue and St. Charles Road striking two people. Undeniably, an individual who drives at such high rates of speed, between 60 and 70 miles per hour, cannot lack the conscious awareness that he might hit someone or something.

A person commits aggravated battery when he intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement. (Ill. Rev. Stat. 1985, ch. 38, par. 12—4.) Defendant drove with Patrice Williams clinging to the hood of the car for 14 blocks before she was eventually thrown off the car and onto the pavement. We cannot state that defendant was not consciously aware that driving at such high speeds with a person on the hood of his car would not result in serious bodily harm to that individual. His actions with respect to Ryan Gwin bring us to the identical conclusion.

The determining inquiry relative to this issue was promulgated by *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781, and adopted by *People v. Young* (1989), 128 Ill. 2d 1. " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) (*Young*, 128 Ill. 2d at 49, quoting *Jackson*, 443 U.S. at 318-19, 61 L. Ed. 2d at 573-74, 99 S. Ct. at 2788-89.) A thorough perusal of the record reveals the jury's rational resolution of this issue.

■ Defendant's last two arguments, trial court abuse of discretion in denying his petition for discharge and improper prosecutorial comments during closing argument, are waived on appeal. Preservation of an issue on appeal mandates both the objection at trial and the inclusion of the issue in the post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) As defendant has failed to adhere to these essential steps, these arguments are accordingly waived.

For the aforementioned reasons, we affirm the judgment of the circuit court.

Affirmed.

JIGANTI, P.J., and CAHILL, J., concur.