THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TONY
D. BRUMMETT, Defendant-Appellant.

Fourth District   No. 4—95—0402

Argued November 16, 1995.—Opinion filed April 26, 1996.

James C. Economy (argued), of Decatur, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Leslie Hairston (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Defendant Tony Brummett appeals the trial court's refusal to rescind the summary suspension of his driver's license, arguing (1) the trial court erred in quashing portions of his subpoenas *duces tecum*, (2) he was not given a hearing on the summary suspension of his driver's license within 30 days of his request (625 ILCS 5/2—118.1(b) (West 1992)), (3) he established a *prima facie* case that he was not in "actual physical control" of a motor vehicle on February 25, 1995

(625 ILCS 5/2—118.1(b)(2) (West 1992)), (4) he established a *prima facie* case that he did not operate a motor vehicle on the "public highways" of Illinois on February 25, 1995 (625 ILCS 5/2—118.1(b)(2) (West 1992)), and (5) he established, and the State failed to rebut, a *prima facie* case for rescission based upon a malfunctioning breathalyzer machine (625 ILCS 5/2—118.1(b)(4) (West 1992)). We affirm.

Defendant was arrested for driving under the influence (DUI) (625 ILCS 5/11—501 (West 1992)) on February 25, 1995. On February 27, 1995, defendant filed a motion for substitution of judges as a matter of right. 725 ILCS 5/114—5 (West 1994). On the same day, he filed a request for hearing on a petition to rescind the summary suspension of his license. 625 ILCS 5/2—118.1(b) (West 1992). The petition to rescind, however, was not filed until March 3, 1995. Defendant caused a subpoena *duces tecum* to be issued to various employees of the Decatur police department and State's Attorney's office. On March 17, defense counsel filed a second motion for substitution of judges. On March 24 that motion was withdrawn.

On April 3, the cause was called for hearing on defendant's petition to rescind and on the State's objections to the subpoenas *duces tecum*. Defendant was given a list of witnesses and copies of the breathalyzer results. All other portions of the subpoenas *duces tecum* were quashed and the hearing was recessed until April 14, 1995. On April 14, the trial court denied defendant's petition to rescind. This appeal followed.

On appeal, defendant argues the trial court erred in its ruling on his subpoenas *duces tecum*. While defendant claims the subpoenas *duces tecum* were "summarily quashed," that was not the trial court's order. The trial court held defendant had a right to a list of the State's witnesses, any confessions of defendant, any evidence negating defendant's guilt, and a copy of the breath analysis results. Defendant was provided with a list of witnesses and a copy of the breath analysis results.

■ Subpoenas *duces tecum* are issued by the clerk of the court upon request but may be quashed or modified by the trial court "[f]or good cause shown." 735 ILCS 5/2—1101 (West 1994). The State, at the rescission hearing and on appeal, argues the scope of the subpoena *duces tecum* is governed by the supreme court's decision in *People v. Schmidt*, 56 Ill. 2d 572, 309 N.E.2d 557 (1974). In *Schmidt*, the supreme court held discovery available to a defendant in misdemeanor cases is limited to a list of the State's witnesses, any confessions of the defendant, and any evidence negating defendant's guilt. In misdemeanor DUI cases, a defendant also has a right to the results of the breathalyzer test. *Schmidt*, 56 Ill. 2d at 575, 309 N.E.2d at 558.

In the case at bar, the trial court apparently relied on *Schmidt* in ruling on defendant's subpoenas *duces tecum*.

It could be argued that *Schmidt* is not controlling in the present case. First, *Schmidt* concerned discovery in misdemeanor cases. A rescission hearing is a civil proceeding. A rescission hearing is not penal in nature; it is an administrative method designed to remove dangerous drivers from the Illinois highways. *People v. Teller*, 207 Ill. App. 3d 346, 349, 565 N.E.2d 1046, 1048 (1991). Second, *Schmidt* dealt with discovery, not with the conditions under which a subpoena *duces tecum* should be issued.

Nevertheless, the second district has held the discovery limitations of *Schmidt* apply with equal force to rescission hearings and subpoenas *duces tecum*. *Teller*, 207 Ill. App. 3d at 349, 565 N.E.2d at 1048. The defendant in *Teller* had sought, via the subpoena *duces tecum*, a variety of information, including an arrest report, a case report, all police department directives relating to chemical DUI tests, all maintenance and repair logs of one breathalyzer, and all information related to repair of that machine. *Teller*, 207 Ill. App. 3d at 350-51, 565 N.E.2d at 1049. The *Teller* court held *Schmidt* did not control in this situation, but went on to hold a defendant in a rescission hearing should be provided with the same discovery allowed under *Schmidt*. *Teller* held it was within the discretion of the trial court to grant requests for discovery in excess of that allowed under *Schmidt*. *Teller*, 207 Ill. App. 3d at 349, 565 N.E.2d at 1048. The court recognized that broader discovery was allowed in other civil cases but based its decision on the fact that "the legislature intended the summary suspension and rescission hearing process to be swift and of limited scope." *Teller*, 207 Ill. App. 3d at 351, 565 N.E.2d at 1049.

We agree with the *Teller* approach. While *Teller* was limited to the use of the subpoena *duces tecum* as a discovery device, there is little to distinguish this use from compelling the production of documents at trial for admission into evidence. See *Teller*, 207 Ill. App. 3d at 350, 565 N.E.2d at 1048-49 (discussing the difference between the two types of subpoenas). The amount of discovery available to defendants in civil proceedings has been limited in the past. See *People v. Finley*, 21 Ill. App. 3d 335, 342, 315 N.E.2d 229, 234 (1974) (limiting discovery in implied consent hearings to that allowed under *Schmidt*); *City of Danville v. Hartshorn*, 53 Ill. 2d 399, 404, 292 N.E.2d 382, 385 (1973) (limiting discovery in a civil proceeding on a municipal ordinance violation); *People ex rel. Hanrahan v. Felt*, 48 Ill. 2d 171, 175, 269 N.E.2d 1, 4 (1971) (limiting the extent of civil discovery available in a juvenile delinquency proceeding).

Thus, defendant in the instant case properly received a list of State's witnesses and a copy of his breathalyzer results, the other *Schmidt* discovery materials not being applicable. Any additional discovery to be allowed rested within the discretion of the trial court, and the court's decision to quash the other portions of the subpoenas *duces tecum* cannot be said to have been an abuse of discretion.

■ Defendant next claims he was denied his right to a hearing within 30 days of his request for a rescission hearing. Specifically, defendant argues such a hearing must have been commenced by April 3, 1995, and since only the objections to defendant's subpoenas *duces tecum* were discussed on that date, he was not given a hearing within the statutorily prescribed term. Defendant denies he caused any delay in this case. Both parties agree the 30-day term began running on March 3, when defendant first filed his petition to rescind the summary suspension of his license.

Section 2—118.1(b) of the Illinois Vehicle Code (Code) provides:

> "Upon the notice of statutory summary suspension served under Section 11—501.1, the person may make a written request for a judicial hearing in the circuit court of venue. *** Within 30 days after receipt of the written request or the first appearance date on the Uniform Traffic Ticket issued pursuant to a violation of Section 11—501, or a similar provision of a local ordinance, the hearing shall be conducted by the circuit court having jurisdiction." 625 ILCS 5/2—118.1(b) (West 1992).

In *People v. Schaefer*, 154 Ill. 2d 250, 609 N.E.2d 329 (1993), the supreme court held defendant need only file a petition for a hearing on the statutory summary suspension to start the 30-day time period running. The burden then shifts to the State to set a court date within the 30-day period. The summary suspension will be rescinded if no hearing is held within this 30-day period, *unless delay is occasioned by the defendant. Schaefer*, 154 Ill. 2d at 260-62, 609 N.E.2d at 333-34, citing with approval *In re Summary Suspension of Driver's License of Trainor*, 156 Ill. App. 3d 918, 510 N.E.2d 614 (1987). Defendant bears the burden of proof in a hearing to rescind the summary suspension of his driver's license. *People v. Joiner*, 174 Ill. App. 3d 927, 928-29, 529 N.E.2d 268, 269 (1988).

We reject the argument defendant's hearing was untimely. First and foremost, motions for the substitution of judges clearly constitute delay attributable to a defendant. See *People v. Smith*, 172 Ill. 2d 289, 295-96 (1996); *Trainor*, 156 Ill. App. 3d at 922-23, 510 N.E.2d at 617; *Joiner*, 174 Ill. App. 3d at 929, 529 N.E.2d at 270. This court has even held such motions constitute "[d]elay occasioned by the defendant" within the meaning of the speedy trial statute (see 725

ILCS 5/103—5(f) (West 1994)) where a defendant faces the loss of his liberty, not merely the loss of his driver's license. *People v. Helton*, 153 Ill. App. 3d 726, 730, 506 N.E.2d 307, 309 (1987); see, *e.g., People v. Zuniga*, 53 Ill. 2d 550, 553, 293 N.E.2d 595, 597 (1973); *People v. Anderson*, 112 Ill. App. 3d 270, 272, 445 N.E.2d 432, 434 (1983); *People v. Arsberry*, 242 Ill. App. 3d 1034, 1038, 611 N.E.2d 1285, 1288 (1993); *People v. Turley*, 235 Ill. App. 3d 917, 920, 601 N.E.2d 305, 307 (1992). When a substitution of judge has been requested, the 30-day speedy rescission hearing requirement is tolled "until the newly assigned judge has been furnished with a request for the rescission hearing." *Smith*, 172 Ill. 2d at 296.

This court need not reach the issue left open in both *Smith* and *Trainor*: whether a defendant has an affirmative duty to call the new judge's attention to the pending petition to rescind when a motion to substitute judge is granted. (In both *Smith* and *Trainor*, the defendant actually notified the new judge of his pending motion. Whether a defendant still has this duty, in light of *Schaefer*, is arguable.) In the present case, defendant has failed to provide this court with sufficient evidence in the record showing why the 30-day period should not have been tolled until March 17. Defendant's first motion for substitution of judge was filed on February 28 and granted, resulting in a status hearing date on March 17. The record before us fails to indicate when defendant's case was reassigned by the chief judge. The appellant bears the burden of providing this court with a record adequate to resolve all issues. 155 Ill. 2d R. 323; 134 Ill. 2d R. 329. In the absence of a sufficient record on appeal, this court will presume the trial court's ruling was in conformity with the law. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392, 459 N.E.2d 958, 959 (1984). Thus, it must be assumed the present case was reassigned by the chief judge on or after March 15, so that defendant's hearing on his petition to rescind was held within the statutorily prescribed period on April 14, absent other delay attributable to defendant. Despite the State's concession at oral argument that defendant's first motion to substitute judge was not delay attributable to defendant, we hold that it was.

The delay from the filing of defendant's second motion for substitution of judge on March 17, to its withdrawal on March 24, is also chargeable to defendant. See *Arsberry*, 242 Ill. App. 3d at 1038, 611 N.E.2d at 1288 (finding a continuance at the State's request after defendant filed a second motion for substitution of judge was a delay occasioned by defendant for speedy trial purposes).

Defendant also contends he established a *prima facie* case that he was not in "actual physical control" of a motor vehicle on the night in question. Section 11—501.1(a) of the Code provides in pertinent part:

"Any person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent *** to a chemical test or tests of blood, breath, or urine ***." 625 ILCS 5/11—501.1(a) (West 1994). At a rescission hearing, the motorist has the burden of presenting a *prima facie* case for rescission. *People v. Orth*, 124 Ill. 2d 326, 337-38, 530 N.E.2d 210, 215 (1988). Actual physical control is a question of fact, and the trial court's ruling on the question will not be overturned unless it is against the manifest weight of the evidence. *People v. Scapes*, 247 Ill. App. 3d 848, 850-51, 617 N.E.2d 1366, 1369 (1993).

The trial court evidently found defendant failed to meet his burden at the rescission hearing. At approximately 1 a.m. on February 25, 1995, defendant was found alone at the scene of an accident in which a car registered in his name was involved. Officer Timothy Boulware of the Decatur city police observed defendant's Buick, with extensive front-end damage, resting against a retaining wall in front of a residence. A telephone pole next to the vehicle had been sheared off and broken, and the officer observed what appeared to be freshly downed power lines. At the time of Boulware's arrival, defendant was standing at the rear of the vehicle. Upon ascertaining defendant was not injured, Boulware asked defendant how the accident had occurred. According to Boulware, defendant stated that he had been in a fight earlier at Dooley's (a tavern) and that he was run off the road while drag racing with the other participant in the fight. Boulware testified defendant first admitted driving the car, but upon finding himself within the confines of a squad car, defendant repeatedly recanted his story. When asked who was driving, defendant responded only with "Eric," a response sufficiently vague to keep the police from investigating defendant's friend Eric Leonard. Defendant would not give "Eric's" last name unless Boulware "unarrested" him. The officer waited for an hour after the accident for someone else to show up; no one arrived to claim that they, and not defendant, had been driving.

Defendant presented little evidence in support of his assertion that he was not in actual physical control of his vehicle on the night in question. The only such evidence was his testimony that he was not driving and the testimony of his friend Leonard who, long after the accident, finally came forward to admit he was driving. Leonard's story was improbable. Leonard testified he and defendant had gone to Dooley's that night. According to Leonard, after the two men left Dooley's, a mystery vehicle ran them off the road for no apparent reason. Then Leonard, for unknown reasons, went to get his car,

leaving defendant at the scene of the accident. Although the accident occurred only five to six blocks from his apartment, Leonard did not return in time to see Boulware, who waited for an hour after the accident. Leonard could not even recall if defendant's car was still there when he supposedly returned to the scene. On cross-examination, Leonard could not account for why defendant would have told Boulware he had been in a fight earlier at Dooley's and was eventually driven off the road by the other combatant. Defendant himself denied telling Boulware about an altercation at Dooley's and drag racing with anyone, claiming, instead, not to know how the accident had occurred as he was sleeping in the car at the time. Thus, believing the testimony of defendant's witnesses would have required finding Officer Boulware fabricated a detailed story of fisticuffs, drag racing, and revenge. Considering Boulware knew the name of the bar defendant and his comrade admitted they had visited and the inherent improbability of the stories told by defendant and his friend, we cannot say the trial court's finding on this issue was against the manifest weight of the evidence.

While the facts of this case are somewhat similar to those in *People v. Wireman*, 181 Ill. App. 3d 385, 536 N.E.2d 1346 (1989), that case is distinguishable. In *Wireman*, an officer observed an empty blue Buick stuck in a ditch. Several minutes later, the officer observed the defendant exit another vehicle which had pulled up beside the Buick. The defendant appeared drunk and was arrested. The Buick was registered in the defendant's name, and the officer testified the defendant admitted she was driving the car. The defendant and her husband, however, both testified he was driving the car that night. *Wireman*, 181 Ill. App. 3d at 386, 536 N.E.2d at 1347. The trial court believed the testimony of the defendant and her husband and rescinded the suspension of her driver's license. *Wireman*, 181 Ill. App. 3d at 387, 536 N.E.2d at 1347. The court could not say this finding was against the manifest weight of the evidence. *Wireman*, 181 Ill. App. 3d at 389, 536 N.E.2d at 1349. *Wireman* does not help defendant in this case: the appellate court there refused to overturn the trial court's decision as to the credibility of witnesses, exactly what defendant is asking this court to do in the present case. Here, the trial court believed Officer Boulware and not defendant and his friend.

■ Defendant additionally claims he presented a *prima facie* case that his vehicle was not on a "public highway" within the meaning of section 11—501.1(a) of the Code. In particular, defendant claims to have met his burden in this regard as a result of Officer Boulware's testimony that defendant's car was either totally or partially on private property after the accident.

Defendant's reliance on *People v. Kissel*, 150 Ill. App. 3d 283, 501 N.E.2d 963 (1986), and *People v. Montelongo*, 152 Ill. App. 3d 518, 504 N.E.2d 936 (1987), is inappropriate in the present case. The *Montelongo* court held rescission was proper where the only evidence at trial was that the defendant was involved in an accident in the parking lot of a tavern, which was private property, as he was attempting to leave the bar. *Montelongo*, 152 Ill. App. 3d at 523, 504 N.E.2d at 938. The defendants in *Kissel* were arrested for driving their vehicles in the parking lots of a hotel, an apartment house, and a shopping center, again all private property, while under the influence of alcohol. *Kissel*, 150 Ill. App. 3d at 284, 501 N.E.2d at 963. The rescissions in the consolidated cases in *Kissel* were all affirmed in light of the fact all defendants admittedly drove only on private property prior to their arrests. *Kissel*, 150 Ill. App. 3d at 285, 501 N.E.2d at 964.

The *Kissel* court went on to hold:

"We do not consider *** that our holding would necessarily exempt all drivers *who may be finally stopped and arrested on private property* from the requirements of the implied-consent statute. Where there is evidence that a person drove or was in control of a vehicle upon a public highway while under the influence of alcohol or other drug *** he will be deemed to have consented to testing *** *whether actually arrested on the highway or on private property*." (Emphasis added.) *Kissel*, 150 Ill. App. 3d at 286-87, 501 N.E.2d at 965.

Persons in defendant's position are exactly those the *Kissel* court intended to exclude from its holding—persons whose intoxicated travels happen, by pure chance, to land them on private property at the culmination of their travels.

Whether an individual has driven on a public highway immediately prior to arrest is ultimately a question of fact which may be proved by circumstantial evidence. *People v. Foster*, 170 Ill. App. 3d 306, 310, 524 N.E.2d 681, 684 (1988). The motorist has the burden of presenting a *prima facie* case for rescission. *Orth*, 124 Ill. 2d at 337-38, 530 N.E.2d at 215. The only evidence presented by defendant in the present case was the testimony of Officer Boulware, who first testified defendant's car was found on private property but later explained it was mostly on the public sidewalk. The circumstantial evidence is against defendant in this case. Defendant's car was found just off the street on a public sidewalk, next to a severed telephone pole with what appeared to be freshly downed power lines. The trial court's ruling on this issue was not against the manifest weight of the evidence.

Defendant's final contention is that he established a *prima facie* case for rescission based on a malfunctioning breathalyzer and that the State failed to lay the necessary foundation to rebut the *prima facie* case. Specifically, defendant claims he was given the breathalyzer test twice after the first test registered "interfering substance." Since the administering officer testified he had never experienced this reading before, defendant contends he presented a *prima facie* case for rescission.

In *Orth*, the supreme court set out the procedure whereby a motorist may contest the accuracy of his breathalyzer results. If the motorist can present a *prima facie* case that the test results were inaccurate, the burden shifts to the State to lay a proper foundation to admit the test results into evidence. Until such evidence is presented the State need not subpoena witnesses. The *Orth* court described the evidence necessary for the motorist to establish a *prima facie* case for rescission as "any circumstance which tends to cast doubt on the test's accuracy, including, but not limited to, credible testimony by the motorist that he was not in fact under the influence of alcohol." *Orth*, 124 Ill. 2d at 341, 530 N.E.2d at 217. The trial court's ruling whether the motorist presented a *prima facie* case will not be overruled unless it is against the manifest weight of the evidence. *Orth*, 124 Ill. 2d at 341, 530 N.E.2d at 217.

■ From the record in this case, it cannot be said the trial court's decision was against the manifest weight of the evidence. Officer Neil Kline performed a breath analysis on defendant at the Macon County DUI room. Kline testified the machine performed a self-test satisfactorily. Defendant's blood-alcohol level (BAL) was found to be 0.15. Defendant's only evidence at trial was Kline's testimony that he thought he remembered giving defendant two tests after the first might have registered "interfering substance." Defendant admitted drinking on the night in question and never asserted that the 0.15 reading was an unreasonable estimate of his BAL on that night. Whether, in fact, the "interfering substance" reading ever occurred in this case is subject to doubt. Officer Kline was at first unsure about it. Defendant himself did not remember it. The logbook shows only one test administered to defendant. While Kline could not remember seeing this reading before, the "interfering substance" reading had, in fact, occurred in the past on this machine, according to the few log pages in the record. More importantly, these log records indicate that when a motorist performs the test resulting in an "interfering substance" reading, the motorist takes the test again, until a numerical readout is obtained. Kline testified this is standard procedure when this readout is obtained. Thus, there is support in the record

for the trial court's ruling finding defendant failed to present a *prima facie* case for rescission.

Assuming defendant established a *prima facie* case for rescission, defense counsel himself laid substantially all the foundation necessary under *Orth* for the State to admit the results and rebut defendant's *prima facie* case. Under *Orth*, once a motorist has presented a *prima facie* case for rescission, the State must lay the following foundation to avoid rescission:

> "(1) evidence that the tests were performed according to the uniform standard adopted by the Illinois Department of Public Health, (2) evidence that the operator administering the tests was certified by the Department of Public Health, (3) evidence that the machine used was a model approved by the Department of Health, was tested regularly for accuracy, and was working properly, (4) evidence that the motorist was observed for the requisite 20 minutes prior to the test and, during this period, the motorist did not smoke, regurgitate, or drink, and (5) evidence that the results appearing on the 'printout' sheet can be identified as the tests given to the motorist." *Orth*, 124 Ill. 2d at 340, 530 N.E.2d at 216-17.

In the present case, defense counsel elicited much of this foundational evidence from Officer Kline. Any doubt as to the sufficiency of the foundation was removed by the State's Attorney when she elicited additional foundational testimony from Kline.

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

GARMAN and KNECHT, JJ., concur.