THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FLYNT J. LEE, Defendant-Appellant.

First District (2nd Division)   No. 1—89—2803

Opinion filed November 19, 1991.

Randolph N. Stone, Public Defender, of Chicago (Mark Floyd Pasterski, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's 'Attorney, of Chicago (Renee Goldfarb, David Stabrawa, and Patrick Sheehan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant was convicted by a jury of attempted murder, armed robbery, attempted aggravated criminal sexual assault, and aggravated battery. He was sentenced to 30 years on the attempted murder conviction, 15 years on the sexual assault conviction, and 30 years on the armed robbery conviction, all to be served concurrently. The aggravated battery conviction was "deemed merged with the concurrent [*sic*]." On appeal he challenges the attempted murder and armed robbery convictions, raising issues concerning jury instructions; whether the *corpus delicti* was proved for armed robbery; and whether there was sufficient evidence that something of value was taken from the victim's presence as required for an armed robbery conviction.

The State's evidence adduced at trial was as follows. Jaclynn Webb, the victim, testified that she first met defendant, Flynt J. Lee, in mid-November of 1987 at a Matteson, Illinois, real estate development office, where she was selling model homes. Defendant inquired about decorating and tiles, and then left. On December 2, 1987, defendant reentered Webb's office and inquired as to the decorating in one of the model homes. The models were not open for exhibition; however, Webb needed to take pictures and replace light bulbs in the models. Before proceeding to the other models, Webb locked her purse in a drawer and hung her camera around her neck. Defendant followed, carrying the light bulbs. Inside the first model, Webb took pictures, and defendant replaced light bulbs throughout.

Webb testified that defendant attacked her when she entered the bedroom. No one else was present. He grabbed her from behind, told her to climb on the bed, pushed her onto the bed, and instructed her to stop screaming or he would kill her. As Webb attempted to escape, defendant struck her face with his fist; jumped on her back, rebreaking her recently fractured collar bone; picked up the camera cord, which Webb had thrown on the floor, and wrapped and twisted the cord around her neck; repeatedly yelled "I am going to kill you"; and continuously banged Webb's head on the floor. Thereafter she felt two additional "bangs" when something hit her head. She was in great pain. She lost her presence of mind.

Defendant demanded her keys, which she gave him. After he left, she started to get up, at which point she discovered her panty hose

were down around her knees and blood covered her and the room. She tried to scream, but had no voice. Webb walked and crawled back to the office and called the police. When the police arrived, she described the events in detail.

Doctor John Heyer saw Webb in the Olympia Fields Osteopathic Hospital emergency room and testified for the State. Webb was lucid and able to respond to questions. Her blood pressure dropped due to the loss of blood; she sustained eight lacerations on her head; a portion of her skull was fractured and depressed; and there was no brain damage.

Matteson police detective Frederick Newstat testified that he interviewed Webb in the hospital the evening of December 2, 1987. She and her garments were blood soaked. She lost and regained consciousness intermittently during the interview. Essentially, she recounted the same facts set forth above. Webb informed him that during the attack she lost consciousness. When she awoke, defendant demanded to know the whereabouts of her purse; she told him it was in the office drawer. Subsequent investigation revealed that the purse was missing from the drawer. On December 9, 1987, a photographic array was presented to Webb at the hospital, from which she identified defendant immediately as her assailant.

Defendant was arrested. After being read his *Miranda* rights, defendant gave Detective Newstat and his partner, Sergeant Lawrence P. Miller, an oral statement, which implicated him as the offender. The statement was reduced to writing, which defendant signed on December 15, 1987. Newstat read the statement to the jury, in which defendant confessed to being on cocaine during the incident, planned to take Webb's purse or camera, entered the model home, changed the light bulbs, choked her, intended to knock her out by striking her with a lamp, pulled her pants down to fulfill a sexual fantasy of rape, but stopped when he saw she had her period, took her keys, and removed Webb's purse from the drawer in the office.

On December 16, 1987, defendant was identified by Webb at a police lineup. Inspector Dexter J. Bartlett, a crime scene specialist, testified as to analysis of finger prints and bloodstains found at the crime scene. Lauren Wicevic, latent print examiner for the Chicago police department, attested to the processing of fingerprints.

Assistant State's Attorney Scott Cassidy related that during an interview, defendant informed him that as he attacked Webb, he told her he was going to kill her. This was not noted in defendant's original confession of December 15, 1987; Cassidy instructed another detective to type a new statement, which added this information to the

statement previously signed by defendant. He gave this to defendant, who signed it. The State rested.

Defendant's motion for directed finding was denied on all counts.

Defendant testified on his own behalf. He stated that the only time he touched Webb's camera was to check the film. Defendant claimed that he left Webb and began changing light bulbs throughout the model; the next time he saw Webb, a third person was on Webb's back. Defendant knocked a lamp out of the third person's hand and told him to stop until defendant could leave the building. Defendant denied attacking Webb or touching her purse, and denied threatening to kill her. Defendant further testified that, upon advice of an attorney, he wrote letters to the circuit judge; parts of the letters were false. He ended the letter of July 10, 1988, with "I never tried to kill anyone." Defendant denied ever meeting Assistant State's Attorney Cassidy or making the intent to kill remark.

The jury found defendant guilty, and he was sentenced as first noted.

I

Defendant initially claims it was plain error for the circuit court to instruct the jury that it could find him guilty of attempted murder based upon either an intent to kill or an intent to commit great bodily harm. The State claims defendant waived this issue by failing to offer alternative instructions, and the instruction amounted to harmless error in any event.

The issue of improper jury instruction is waived if appellant fails to object at trial and does not raise the issue at post-trial motion, unless the interests of justice require otherwise. (*People v. Thurman* (1984), 104 Ill. 2d 326, 329, 472 N.E.2d 414.) Here, defendant properly objected to the instruction when proposed, and further raised this as an issue in his motion for a new trial. Accordingly, there was no waiver.

■ As to the substance of the instruction, defendant argues that permitting a jury to return a verdict against a defendant of attempted murder, without a finding of intent to kill, when mental state is in issue, is reversible error, relying on *People v. McDaniel* (1984), 125 Ill. App. 3d 694, 701, 466 N.E.2d 662. The State responds with *People v. Jones* (1979), 81 Ill. 2d 1, 405 N.E.2d 343, and *People v. Solis* (1991), 216 Ill. App. 3d 11, 576 N.E.2d 120, which posit harmless error when mental state is not at issue. (See also *People v. Stewart* (1987), 161 Ill. App. 3d 99, 111, 514 N.E.2d 51; *People v. Cloyd* (1987), 152 Ill.

App. 3d 50, 55, 504 N.E.2d 126.) Here, however, whether or not defendant intended to kill Webb was a major issue.

Webb testified that defendant instructed her to stop screaming or he would kill her. Defendant first confessed that he only wanted to knock her out. In a second confession, however, defendant admitted telling her he was going to kill her. Defendant testified that he did not threaten to kill Webb and he denied ever meeting the State's Attorney who prepared the second confession. The conflicting evidence created an issue of defendant's intent to kill Webb. At closing argument, the State recognized this issue in asserting: "[T]hey want you to believe *** he did not have the right intent."

Under the circumstances of this case, with defendant's intent to kill in issue, the jury was improperly allowed to return a verdict against him of attempted murder if he intended to cause great bodily harm. (*People v. Harris* (1978), 72 Ill. 2d 16, 26-27, 377 N.E.2d 28; see also *People v. Jaffe* (1986), 145 Ill. App. 3d 840, 493 N.E.2d 600.) Accordingly, the conviction and sentence as to attempted murder must be reversed and the cause remanded for a new trial with proper instructions.

## II

Defendant next asserts that the *corpus delicti* of armed robbery was not proved. Armed robbery requires that a perpetrator take property from the person or presence of another by use of force with a deadly weapon. (Ill. Rev. Stat. 1987, ch. 38, pars. 18—1(a), 18—2(a).) Defendant was charged with taking "a purse," and contends there was no evidence demonstrating that a purse was taken. Defendant insists that Detective Newstat's inability to find the purse does not corroborate his admission of obtaining the purse.

The *corpus delicti* rule requires only that evidence apart from defendant's confession tends to show the commission of a crime; such evidence need not prove the crime beyond a reasonable doubt. (*People v. Furby* (1990), 138 Ill. 2d 434, 450, 563 N.E.2d 421.) Defendant maintains that Detective Newstat's testimony is insufficient to corroborate his confession as to taking the purse because he would not know the purse if he saw it. This argument ignores the fact that no purse was found in the drawer.

The *corpus delicti* may be proved by circumstantial evidence. (*People v. Lueder* (1954), 3 Ill. 2d 487, 488, 121 N.E.2d 743; *Campbell v. People* (1895), 159 Ill. 9, 22, 42 N.E. 123; *People v. Webb* (1987), 153 Ill. App. 3d 1055, 1058, 506 N.E.2d 801.) Detective Newstat's account of his interview with Webb revealed that she told him of defendant's

demand to know the whereabouts of her purse, and she informed him of its location. Defendant demanded and took Webb's keys to the desk drawer in which the purse was located. Detective Newstat discovered that the purse was missing from the drawer. The foregoing evidence corroborated defendant's confession as to his taking of Webb's purse.

Defendant relies on *People v. Lee* (1986), 151 Ill. App. 3d 510, 531-32, 502 N.E.2d 399;. however, unlike the present case, there was no evidence, circumstantial or otherwise, in *Lee*, as to an attempted robbery. See *People v. Morando* (1988), 169 Ill. App. 3d 716, 725, 523 N.E.2d 1061 (which distinguishes *Lee* on similar grounds).

There was sufficient evidence in the case *sub judice* to corroborate defendant's confession as to the taking of the *corpus delicti*, the purse; the armed robbery conviction and sentence must stand.

### III

Defendant lastly urges there was insufficient evidence that an object of value was taken from Webb's presence. Statutory armed robbery requires the taking of property from the person or presence of another by the use of force or by threatening the imminent use of force while armed with a deadly weapon. (Ill. Rev. Stat. 1987, ch. 38, pars. 18—1(a), 18—2(a).) Since Webb's purse was removed from a separate room and the only thing taken from Webb's immediate presence was her keys, defendant concludes that the purse was not taken from Webb's presence as required by statute; therefore, the evidence was insufficient to prove beyond a reasonable doubt that a robbery took place. *People v. Was* (1974), 22 Ill. App. 3d 859, 318 N.E.2d 309.

Statutory presence is not limited to immediate presence. The taking from a person or that person's presence is met when property is in the possession or control of the victim, and the robber uses force or fear of violence as the means to take it. (*People v. Smith* (1980), 78 Ill. 2d 298, 302-03, 399 N.E.2d 1289; *People v. Harris* (1990), 195 Ill. App. 3d 421, 423, 552 N.E.2d 392.) The test for statutory presence is satisfied where the taken property was sufficiently within the victim's possession or control, and violence or the threat of violence was the means by which the taking was accomplished; the element of presence can be proved even where the taken property was not on the victim's person or within the latter's immediate control. *People v. Blake* (1991), 144 Ill. 2d 314, 320; *People v. Carpenter* (1981), 95 Ill. App. 3d 722, 726, 420 N.E.2d 640, 644.

The evidence before us demonstrates that Webb had control over her purse: she locked it in a drawer; she carried the keys to the drawer; and she was within walking distance of her purse. By locking

the drawer, Webb prevented defendant from taking the purse absent his taking of her keys in order to obtain the purse. The fact that property is in a different location at the time of a taking is not dispositive of presence. Illinois and other courts have repeatedly sustained convictions where the victim was at a different location than the property taken. *People v. Smith* (1980), 78 Ill. 2d 298, 399 N.E.2d 1289 (victim left money at drop sites due to bomb threat); *Carpenter*, 95 Ill. App. 3d 722 (victim locked in another room when cash box was taken); *State v. Edwards* (1985), 109 Idaho 501, 708 P.2d 906 (keys to a van taken at gunpoint in a motel room implicated defendant in the theft of the vehicle); *Lancaster v. State* (Okla. Crim. App. 1976), 554 P.2d 32 (similar facts); *Fields v. State* (Okla. Crim. App. 1961), 364 P.2d 723 (money taken from an automobile after its location disclosed by the victim while locked in a vault).

Accordingly, the armed robbery conviction and sentence must be affirmed on this basis as well.

For the reasons stated, we reverse defendant's conviction and sentence for attempted murder and remand for a new trial. We affirm defendant's conviction and sentence for armed robbery.

Reversed and remanded in part; affirmed in part.

SCARIANO, P.J., and DiVITO, J., concur.