THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TOIJUAN COOKSEY, Defendant-Appellant.

First District (3rd Division)   No. 1—97—2689

Opinion filed December 22, 1999.

McBRIDE, J., dissenting.

Michael J. Pelletier and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Margaret J. Faustmann, Assistant State's Attorneys, and Bumjoon Park, law clerk, of counsel), for the People.

JUSTICE BURKE delivered the opinion of the court:

Following a jury trial, defendant Toijuan Cooksey was convicted of robbery (720 ILCS 5/18—1 (West 1996)) and vehicular hijacking (720 ILCS 5/18—3 (West 1996)) and sentenced to concurrent terms of 7 years' and 10 years' imprisonment, respectively. On appeal, defendant contends that the State failed to bring him to trial within 120 days, in violation of the Code of Criminal Procedure of 1963 (725 ILCS

5/103—5 (West 1996)) and to prove him guilty beyond a reasonable doubt of robbery and vehicular hijacking. For the reasons set forth below, we affirm in part and reverse in part.

Defendant was arrested and charged with robbery and vehicular hijacking on May 8, 1996, and was arraigned on June 19. At defendant's arraignment, the parties set the case for status for June 28, by agreement, at which time the case was continued until August 6, by agreement. On that date, defense counsel informed the court that he was still waiting for discovery materials from the State: specifically a "911" tape and photographs to prepare a motion to suppress the identification of defendant. Defense counsel asked the court to set the case for August 26, and the court stated that the cause would be set over for the State's compliance with discovery, by agreement.

On August 26, 1996, after calling the case, the State advised the court that discovery matters were still outstanding, and it requested a continuance to September 10. The court asked defense counsel whether September 10 was a "good date," and defense counsel replied, "Yes, Judge. That's fine." The following exchange then occurred:

"THE COURT: By agreement, September 10. Now I'm taking a half day off on that date, so—

MR. WIMBERLY [defendant's attorney]: I'll be here at 9:00.

THE COURT: Okay, See you back on September 10th.

MR. WIMBERLY: Okay. Thank you. Have a good day."

On September 10, defense counsel stated to the court that he had received the State's answer to discovery but had not received any other discovery materials. The following exchange then occurred:

"MR. WIMBERLY: I may request, I don't know what a two-week date is, if September 23rd is okay *** or 26th, and then I may have to request a rule to show cause as to why discovery is not here.

* * *

THE COURT: *** What is a good date for you?

MR. WIMBERLY: The 23rd or the 26th, one of those dates.

THE COURT: You can have either one. The 23rd is a bad day. *** [T]he 26th?

MR. WIMBERLY: 26th, then, yes."

Subsequently, the case was continued, by agreement, to September 26, 1996, and on December 6, defense counsel filed a motion to suppress. On January 22, 1997, defendant withdrew the motion and demanded trial. The cause was continued on "Motion State" from January 22 to April 7. On April 7, the State moved, over defendant's objection, to extend the 120-day term another 60 days. The court allowed an extension, and on June 2, 1997, defendant's jury trial began.

At trial, the victim, Iramie Lavizzio, testified that on Sunday, May

5, 1996, she had been working as a supervisor at a J. Riggins clothing store in the River Oaks shopping mall in Calumet City, Illinois. The victim arrived at the store shortly before 11 a.m. and began her normal routine to open the store, part of which included collecting money and checks from the previous day and depositing them in a nearby neighborhood bank. While the victim was placing the cash and checks into a deposit bag, defendant, whom the victim had been dating for a few weeks, called her to ask for a ride. The victim informed defendant that she could not leave the store right away, but that she had to make a deposit and could then pick him up. Approximately five minutes after the first call, defendant called again to see if the victim was ready to pick him up, and the victim replied that she was just leaving with the deposit. The victim further testified that defendant had previously observed her normal routine in opening the store, had ridden with her to the bank, and had observed how she had made deposits.

The victim stated that she left the store carrying the deposit bag, walked to a service entrance of the mall not generally accessible to the public, and opened a door to go outside. As the victim was exiting through the door, someone whom she later identified as defendant, who was at that moment wearing either a bandanna or scarf around his mouth area, jumped from behind a Dumpster toward her. The victim immediately dropped the deposit bag, which contained approximately $1,400 in currency and $300 in checks, and ran while yelling for help. The victim looked back to see defendant pick up the deposit bag. Defendant then yelled, "Come back here," as he began chasing the victim.

Defendant caught up with the victim, stuck "something" in her back, and demanded her car keys. The victim handed over her keys, and defendant pushed her and told her to run. The victim ran into the mall and notified mall security officers who, in turn, notified the police.

Jeff McBrayer, a mall security officer, testified that the victim had run up to him hysterically, telling him that she was just robbed and her car was just stolen. He accompanied her back to the store, and the victim then went to the parking lot to discover that her car was missing.

Daniel Shepherd, an eyewitness called by the State, testified that he was in the mall parking lot at the time of the incident, heard a woman scream and saw a man, whom he later identified as defendant, attack the woman and then run toward a car. Shepherd then observed defendant get in the car and speed off.

Defendant presented an alibi defense. After hearing the parties'

closing arguments, the jury retired and subsequently found defendant guilty of robbery and vehicular hijacking. Thereafter, the trial court sentenced defendant to concurrent terms of 7 and 10 years' imprisonment for robbery and vehicular hijacking, respectively. This appeal followed.

Defendant first contends that his right to a speedy trial was violated because the State failed to bring him to trial within 120 days as required by section 103—5(a) of the Code of Criminal Procedure (Code) (725 5/103—5(a) (West 1996)).

■ Section 103—5(a) of the Code provides, in pertinent part, that "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant." 725 5/103—5(a) (West 1996). A delay is occasioned by or attributable to the defendant when the defendant's acts caused or contributed to the delay resulting in the postponement of trial. See *People v. Turner*, 128 Ill. 2d 540, 550, 539 N.E.2d 1196 (1989). An express agreement to, or acquiescence in, a continuance is an affirmative act attributable to the defendant for purposes of determining whether or not he was denied his right to a speedy trial. See *People v. Reimolds*, 92 Ill. 2d 101, 106, 440 N.E.2d 872 (1982). The 120-day speedy-trial statutory period begins to run automatically, without a formal demand for trial, from the day the defendant is taken into custody. See *People v. Garcia*, 251 Ill. App. 3d 473, 476, 621 N.E.2d 1035 (1993). However, any period of delay occasioned by the defendant temporarily tolls the running of the speedy-trial period until the expiration of the delay, at which point the period recommences. See *People v. Kliner*, 185 Ill. 2d 81, 114, 705 N.E.2d 850 (1998). The defendant bears the burden of affirmatively establishing a speedy-trial violation by showing that the delay was not attributable to his own conduct. See *Kliner*, 185 Ill. 2d at 114.

■ Initially, we consider the State's argument that defendant has waived this issue on appeal due to his failure to file an oral or written motion to dismiss based on an alleged violation of his right to a speedy trial. Pursuant to sections 114—1(a)(1) and (b) of the Code, an accused claiming a violation of his right to a speedy trial is required to file a written motion seeking discharge prior to conviction; otherwise, "the grounds therefor *** are waived." 725 ILCS 5/114—1(a)(1), (b) (West 1996). In the present case, although the record indicates that defense counsel demanded trial on January 22, 1997, defense counsel failed to file either an oral or written motion prior to trial seeking discharge or dismissal based upon a speedy-trial violation. Accordingly, the State is correct that defendant failed to properly preserve this issue for our review.

■ Defendant argues, however, that even if he has waived the issue we should still consider the merits of his argument because his attorney's failure to preserve the issue constitutes ineffective assistance of counsel. A defense counsel's failure to move for discharge of his client on the ground of a speedy-trial violation constitutes ineffective assistance of counsel where there is at least a reasonable probability that the defendant would have been discharged had a timely motion been filed and no justification exists for the defense counsel's decision not to file a motion. See *Garcia*, 251 Ill. App. 3d at 478-79. The defense counsel's failure to move for discharge or dismissal, however, cannot demonstrate either deficient performance on the defense counsel's part or prejudice to the defendant where no lawful grounds exist to move for discharge or dismissal. See *Garcia*, 251 Ill. App. 3d at 479. Based on this case law, we will examine the merits of defendant's speedy-trial violation argument to determine whether defendant may have been deprived of the right to effective assistance of counsel.

■ Defendant argues that four specific periods of time are attributable to the State: (1) from May 8, 1996, until June 19, 1996 (42 days); (2) from August 26, 1996, until September 10, 1996 (15 days); (3) from September 10, 1996, until September 26, 1996 (16 days); and (4) from January 22, 1997, until April 7, 1997 (75 days). The State concedes that the first period of 42 days and the fourth period of 75 days, constituting a total of 117 days, should be attributed to the State. As to the second period of 15 days and the third period of 16 days, the State argues that these days are attributable to defendant. Accordingly, we will concentrate our review on these two periods of time.

The first period at issue is the 15 days from August 26, 1996, to September 10, 1996. According to the record, defense counsel had filed a discovery motion seeking a "911" tape that had already been destroyed, a fact not known by either side for several months. Defendant was also seeking photographs to prepare a motion to suppress the identification of defendant. The State, on the other hand, was requesting a continuance until September 10, "understanding the court [would] only be [available] in the morning, and just to status as to exchanging discovery." Defense counsel replied "Yes" and "That's fine" to the trial court in response to its question whether September 10 would be a "good date." Defense counsel also stated that he would "be [present] at 9:00" on September 10. The trial court replied, "See you back on September 10," and defense counsel stated, "Okay. Thank you. Have a good day."

On August 26, the State was seeking a continuance to comply with defendant's discovery motion of a "911" tape. "A delay occasioned by the processing of [a] defendant's motions, including the time required

for the State to respond and the time necessary for the court to hear and decide the issues, is attributable to the defendant." *Kliner*, 185 Ill. 2d at 117. Another reason for the delay was defense counsel's request for photographs to prepare a motion to suppress the identification of defendant, a motion which defendant subsequently filed on December 6. Discovery motions, as well as other defense motions, are delays attributable to defendant. See *Kliner*, 185 Ill. 2d at 116-17, 120.

Moreover, the remaining colloquy between the trial court and defense counsel supports our conclusion that defense counsel expressly agreed to a continuance until September 10. In response to the trial court's query whether September 10 would be a "good date," defense counsel responded affirmatively, "Yes, Judge. That's fine." See *Kliner*, 185 Ill. 2d at 117-18 (holding that defense counsel's reply "that would be just fine" to a continuance constituted an express agreement to the continuance). The court then set the date for September 10 and stated that the continuance was "by agreement," to which defense counsel responded, "I'll be [present] at 9:00." See *Kliner*, 185 Ill. 2d at 120-21 (holding that defense counsel expressly agreed to a continuance by responding, "Very good, your Honor," to the trial court's statement that there was an agreed continuance). Defense counsel further agreed to a continuance by responding "Okay" to the court's statement that it would see defense counsel in court on September 10. We conclude that these affirmative statements by defendant's counsel to both a request for a continuance and the court's setting of the date for September 10 "by agreement" were affirmative acts contributing to the delay of defendant's trial. See *People v. Andrade*, 279 Ill. App. 3d 292, 298, 664 N.E.2d 256 (1996) (defense counsel's statement, "Sure," to a continuance was an affirmative agreement to a continuance); *People v. Arsberry*, 242 Ill. App. 3d 1034, 1039, 611 N.E.2d 1285 (1993) (same). When a defense counsel verbally indicates to the trial court that he is agreeable to a continuance, he causes or contributes to the delay and the defendant is bound by his counsel's actions. See *Kliner*, 185 Ill. 2d at 117-18; *Arsberry*, 242 Ill. App. 3d at 1038-39. We therefore conclude that the 15 days from August 26 to September 10 are attributable to defendant and not to the State.

The second period at issue is the 16 days from September 10 to September 26. On September 10, defense counsel stated to the trial court that, although he had received the State's answer to discovery, he had not received other discovery materials. Defense counsel then specifically requested a "two-week date," and he asked whether either September 23 or September 26 was "okay." Defense counsel abstained from objecting to a continuance and merely warned that he would object on the next date by filing a rule to show cause. After further

discussion regarding discovery of the nonexistent "911" tape, the trial court assured defense counsel that if the State did not complete discovery by the next date, it would enforce defense counsel's yet-to-be filed rule to show cause. Thereafter, the court asked defense counsel, "What is a good date for you?" Defense counsel chose the September 26 date as the next continuance date. We find that defendant's affirmative act in specifically requesting a continuance tolled the 120-day statutory period. See *Turner*, 128 Ill. 2d at 550; *People v. Stuckey*, 231 Ill. App. 3d 550, 561, 596 N.E.2d 646 (1992). We therefore conclude that the period from September 10 to September 16 is attributable to defendant rather than to the State.

Based on the above, defendant received his right to a speedy trial because only 117 days from defendant's arrest to commencement of his trial are attributable to the State. Moreover, because no violation of defendant's right to a speedy trial occurred, a motion for discharge would have been unavailing and defendant, therefore, cannot premise a claim of ineffective assistance of counsel based on his attorney's failure to file such a motion.

Defendant next contends that the State's evidence failed to prove all the elements of vehicular hijacking. The State argues that the jury properly found defendant guilty.

It is well settled that if a defendant challenges the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). It is also well settled that " '[i]t is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses.' " *People v. Johnson*, 114 Ill. 2d 170, 190, 499 N.E.2d 1355 (1986), quoting *People v. Novotny*, 41 Ill. 2d 401, 412, 244 N.E.2d 182 (1968). However, where a defendant does not challenge the facts or credibility of witnesses, as in the present case, the issue on the sufficiency of the evidence is a question of law and is reviewed *de novo*. See *People v. Garriott*, 253 Ill. App. 3d 1048, 1050, 625 N.E.2d 780 (1993), citing *In re D.G.*, 144 Ill. 2d 404, 408-09, 581 N.E.2d 648, 649 (1991).

■ Section 18—3(a) of the Criminal Code of 1961 defines vehicular hijacking as follows:

"A person commits vehicular hijacking when he or she takes a

motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18—3(a) (West 1996).

There have been no Illinois cases dealing with the interpretation of the term "immediate presence." A reading of the debates in the legislature demonstrates that the legislature believed that "immediate presence" was

> "the same language that we have in terms of robbery, I think, and you could be, I suppose repairing your car, or changing a tire, or at the gas pump and—and filling it up and still this offense would still take place. No, you couldn't be in the store away from the car at the time." 88th Ill. Gen. Assem., Senate Proceedings, April 15, 1993, at 283 (statements of Senator Hawkinson).

Based on the comments of the sponsor of the bill to enact the vehicular hijacking statute, it is clear that the vehicular hijacking statute was enacted to combat the "tragedies \*\*\* of car hijacking where someone armed or unarmed attacks a car, and either snatches the driver out \*\*\* [or] sometimes these carjackings occur where a young child is a passenger in the car and is taken for a ride after a mother or father is—is yanked from the car." 88th Ill. Gen. Assem., Senate Proceedings, April 15, 1993, at 281 (statements of Senator Hawkinson).

The State argues that since there is no direct authority defining the vehicular hijacking statute, this court may utilize the cases interpreting the robbery statute to provide definitions for the vehicular hijacking statute, as this court did in *People v. Aguilar*, 286 Ill. App. 3d 493, 676 N.E.2d 324 (1997). In *Aguilar*, the robbery statute at the time contained language identical to that at issue in the vehicular hijacking statute. *Aguilar*, 286 Ill. App. 3d at 497. Specifically, robbery was defined as when a person "takes property, except a motor vehicle covered by Section 18—3 or 18—4 [of the Criminal Code of 1961], from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18—1(a) (West 1996). The "question" at issue in *Aguilar* was what actions constitute *"by the use of force or* by *threatening the imminent use of force."* (Emphasis in original.) *Aguilar*, 286 Ill. App. 3d at 497.

While the language of the robbery statute in *Aguilar* was *identical* to the language of the vehicular hijacking statute, the language of the robbery statute upon which the State relies in the case at bar is *not* identical to the language of the vehicular hijacking statute. Compare 720 ILCS 5/18—1(a) (West 1996) and 720 ILCS 5/18—3(a) (West 1996). The operative words in the case at bar are that "[a] person commits vehicular hijacking when he or she takes a motor vehicle *from the person or immediate presence of another."* (Emphasis added.) *720*

ILCS 5/18—3(a) (West 1996). Clearly, the language of the vehicular hijacking statute applicable in the present case, by its plain terms, requires *more* than the mere "presence" required by the robbery statute. In order to prove vehicular hijacking, the State must prove not only that the motor vehicle was taken from the "person or presence" of another, but that the motor vehicle was taken from the "person or *immediate* presence" of another person. (Emphasis added.) 720 ILCS 5/18—3 (West 1996). As such, we find that the definition of "presence" for purposes of the robbery statute is not particularly helpful for a definition of what constitutes "immediate presence" for purposes of vehicular hijacking.

The debates in the legislature make it clear that the legislature intended the statute to protect against the forceful taking of cars from a driver or passenger while that driver or passenger is in the immediate vicinity of the car. As stated by Senator Hawkinson, there would be no vehicular hijacking if the victim was "in the store away from the car at the time." 88th Ill. Gen. Assem., Senate Proceedings, April 15, 1993, at 283 (statements of Senator Hawkinson).

■ The undisputed evidence in the present case showed that at no time did the victim approach her car. Rather, the victim was directly outside the entrance to the mall and standing 25 feet away from her car when defendant jumped in front of her. She was not even attempting to gain entry to her car. Moreover, it is clear that, when she originally fled, she did not flee to her car. Had she fled to her car and attempted to escape in her car, and then defendant demanded the keys or removed her from the car, defendant would clearly have committed vehicular hijacking. However, that was not the case here. The intent of the legislature was to create a new offense when someone forcibly removes someone from his or her car or otherwise forcibly dispossesses someone of his or her car. Moreover, the State concedes, in its brief to this court, that "the victim was not immediately in the presence of her car." Accordingly, since the evidence failed to show that defendant took the victim's car from her person or *immediate presence*, we find that the State failed to prove an element of the offense of vehicular hijacking beyond a reasonable doubt. We therefore reverse defendant's conviction and sentence for vehicular hijacking.

Lastly, defendant contends that "the State failed to prove that *** [he] used *force or threat of force to cause* *** [the victim] *to relinquish the currency and checks*; thus defendant's robbery conviction must be reversed." The State argues that "defendant's actions did constitute an objective threat of imminent force[,] especially when considering the entire circumstance."

■ As stated above, a person commits the offense of robbery by

taking the property of another by either the use of force or threatening the imminent use of force. 720 ILCS 5/18—1 (West 1996). The offense of robbery can be committed even though the initial taking is accomplished without force if the departure is accomplished by the use of force. See *People v. Generally*, 170 Ill. App. 3d 668, 673, 525 N.E.2d 106 (1988), citing *People v. Ditto*, 98 Ill. App. 3d 36, 38, 424 N.E.2d 3 (1981). Additionally, the use of force or threat of force need not transpire before or during the time the property is taken; rather, the force may be used as part of a series of events constituting a single incident. See *People v. Robinson*, 206 Ill. App. 3d 1046, 1053-54, 565 N.E.2d 206 (1990). Thus, a reviewing court can affirm a jury's finding of robbery even if a defendant initially obtained another's property without employing force. See *People v. Brooks*, 202 Ill. App. 3d 164, 169-70, 559 N.E.2d 859 (1990).

In *Brooks*, the victim had been on a bus when the defendant had, without the victim's knowledge, removed the victim's wallet from her purse. Subsequent to the removal, the victim had noticed the wallet was missing and had confronted the defendant. The defendant pushed the victim in her shoulder and exited the bus. On appeal, the *Brooks* court held that the force used was part of a series of events involving a single incident because the victim's challenge to the defendant's taking had occurred prior to his departure from the bus. *Brooks*, 202 Ill. App. 3d at 170.

■ In the present case, although the victim had not offered any resistance, defendant had pursued her after successfully obtaining the deposit bag filled with currency and cash. Similarly, defendant's pursuit and taking of the victim's car keys occurred without any break in time from when defendant had successfully obtained the deposit bag. As in *Brooks*, the forcible taking in the instant case occurred before defendant had made any attempt to depart the crime scene. We find, as did the court in *Brooks*, that the force used by defendant here was part of a series of events involving a single incident which supports defendant's conviction for robbery.

We further note that the gravamen of robbery is the use of force or intimidation in the taking from a person against his will. See *People v. Thomas*, 189 Ill. App. 3d 365, 369, 545 N.E.2d 289 (1989). A taking by the use of force or threat of force is proven where the fear of the victim was of such a nature that reason and common experience would induce a person to part with his property for the sake of his person. See *Thomas*, 189 Ill. App. 3d at 369. Whether force or threat of force was used is a question of fact for the jury to decide, and this court will not disturb that decision unless the evidence is so improbable or unsatisfactory as to leave a reasonable doubt of guilt. See *Thomas*, 189 Ill. App. 3d at 369.

. In the present case, the victim was exiting through a service-way door of the shopping mall carrying a substantial amount of currency and checks. It is undisputed that defendant, whose face was obscured by a bandanna or scarf, appeared suddenly and jumped out in front of the victim. Defendant postured himself in a manner that clearly conveyed an imminent threat of force. We believe common experience would induce an ordinary person to part with her property for the sake of her person when confronted by a masked man appearing suddenly from behind a Dumpster. Moreover, it was the jury's province to determine whether or not force or the threat of force was employed by defendant. Under the circumstances presented, we do not find the jury's verdict so improbable or unsatisfactory as to leave a reasonable doubt as to defendant's guilt. We therefore affirm defendant's conviction and sentence for robbery.

For the reasons stated, we affirm defendant's conviction and sentence for robbery and reverse his conviction and sentence for vehicular hijacking.

Affirmed in part; reversed in part.

CERDA, J., concurs.

JUSTICE McBRIDE, dissenting:

A jury found the defendant, Toijuan Cooksey, guilty of both robbery and vehicular hijacking. The majority has reversed the vehicular hijacking verdict. I respectfully dissent.

The majority's decision to reverse the jury's vehicular hijacking finding was based upon a determination that the evidence did not establish the motor vehicle was taken from the victim's *immediate presence*. Although I agree with the majority's conclusion that the *immediate presence* language of the vehicular hijacking statute requires more than the "presence" required by the robbery statute (compare 720 ILCS 5/18—3(a), 18—1(a) (West 1996)), I do not agree with the majority's decision to reverse the jury's verdict. I believe the jury could reasonably conclude from all the evidence presented that the defendant took the victim's motor vehicle from her person or her *immediate presence*.

The question of whether or not a vehicular hijacking was established by the evidence presented in this case requires this court to determine if the motor vehicle was taken "from the person or the immediate presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18—3 (West 1996). Because *immediate presence* has not been defined by either the legislature or

this court prior to this case, this court must address what constitutes *immediate presence*.

The cardinal rule of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. *People v. Liberman*, 228 Ill. App. 3d 639, 647, 592 N.E.2d 575 (1992); *People v. Frieberg*, 147 Ill. 2d 326, 589 N.E.2d 508 (1992). In determining that intent, a court may consider not only the language of the statute, but also the reason and necessity for the law, the evil sought to be remedied, and the purposes to be achieved. *Liberman*, 228 Ill. App. 3d at 647. Examining the legislative history of a statute is an appropriate aid to making such a determination. *Liberman*, 228 Ill. App. 3d at 647. Although criminal statutes must be construed strictly in favor of the accused, they should not be so strictly construed as to defeat the intent of the legislature. *Liberman*, 228 Ill. App. 3d at 647; *People v. Goldstein*, 204 Ill. App. 3d 1041, 1044-45, 562 N.E.2d 1183, 1185 (1990).

It is clear the legislature's intent was to address the growing problem of the forceful and often armed taking of vehicles. The legislative debates demonstrate this very concern when the statute's sponsor, Senator Hawkinson, said:

"Unfortunately, in our society from time to time a new—new genre of crime comes along. We're all too familiar with the tragedies around the country of—of car hijacking where someone armed or unarmed attacks a car, and either snatches the driver out ***." 88th Ill. Gen. Assem., Senate Proceedings, April 15, 1993, at 281.

What is unclear, however, is how the language *immediate presence* should be applied in determining whether this element of the offense has been satisfied. The legislative debates surrounding *immediate presence* shed little light on this subject. In response to being asked what the definition of *immediate presence* is, the statute's sponsor only listed a few specific circumstances of when such an element would and would not be satisfied. For example, the motor vehicle would be in the *immediate presence* of a victim if that victim was repairing his car, changing a tire, or pumping gas at the gas pump. A motor vehicle would not be in the *immediate presence* of a victim, however, if the victim's car was taken while the victim was in a store away from his car. See 88th Ill. Gen. Assem., Senate Proceedings, April 15, 1983, at 283.

We can infer from these comments that *immediate presence* would be satisfied when the victim was in close proximity to his or her automobile at the time of the taking. We may also infer that the taking is not in the *immediate presence* of a victim if the victim and the victim's car are separated by an enclosed structure. The problem

however, is whether or not the *immediate presence* requirement under section 18—3 (720 ILCS 5/18—3 (West 1996)) can be satisfied where the victim is farther than a few feet from the vehicle but not inside an enclosed structure. In other words, to what extent does the term "immediate" modify the term "presence" under section 18—3 (720 ILCS 5/18—3 (West 1996)).

As pointed out earlier, although the *immediate presence* language of the vehicular hijacking statute has not been the subject of interpretation in any reported Illinois cases, the "presence" requirement of the robbery statute has. *People v. Blake*, 144 Ill. 2d 314, 320, 579 N.E.2d 861 (1991). And, given the similarity in the language of the two statutes a review of the cases interpreting the requirement of "presence" under the robbery statute is instructive. *People v. Aguilar*, 286 Ill. App. 3d 493, 497, 676 N.E.2d 324 (1997).

"In Illinois, the test for presence under the robbery and armed robbery statute is satisfied if the property taken was sufficiently within the possession or control of the person so that it can be said that violence or the threat of violence was the means by which the taking was effected." *Blake*, 144 Ill. 2d at 320. Under the robbery statute the term "presence" has been interpreted broadly and thus "presence \*\*\* may be established if the owner, possessor or custodian of the property is on the premises at the time of the occurrence." See *Blake*, 144 Ill. 2d at 320 (property in presence of the victim even when that property is located on the first floor of a house while the victim was on the second floor); *People v. Harris*, 195 Ill. App. 3d 421, 423, 552 N.E.2d 392 (1990) (property is in the presence of a victim when it is in the possession of or under the control of the victim in such a way, or to such an extent, that violence or fear of violence was the means the robber used to take it; therefore, defendant's taking of money from a tote bag in an adjoining room from victim satisfied presence); *People v. Lee*, 222 Ill. App. 3d 436, 442, 584 N.E.2d 185 (1991) (victim's purse was in her presence where defendant obtained keys from victim and went into another room and unlocked a desk in order to take victim's purse); *People v. Pavic*, 104 Ill. App. 3d 436, 432 N.E.2d 1074 (1982) (presence requirement satisfied where defendant took victim's property from another room following a sexual assault); *People v. Carpenter*, 95 Ill. App. 3d 722, 726-27, 420 N.E.2d 640 (1981) (property was taken from the presence of a victim even though that victim was in another room at the time of the taking and did not see defendants take anything); *People v. Smith*, 78 Ill. 2d 298, 303-04, 399 N.E.2d 1289 (1980) (presence requirement of robbery statute met where victims were compelled to give up property due to defendant's bomb threats by telephone).

Given the parallels between the language of the vehicular hijacking statute and the robbery statute, it is my opinion that the vehicular hijacking statute was drafted with the robbery statute in mind. See 88th Ill. Gen. Assem., Senate Proceedings, April 15, 1993, at 283 (Senator Hawkinson stating during the legislative debates that "it's the same language that we have in terms of robbery"). In fact, section 18—1 was amended to reflect that: "A person commits robbery when he or she takes property, *except a motor vehicle covered by section 18—3 or 18—4*, from the person or presence of another by the use of force or threatening the imminent use of force." (Emphasis added.) 720 ILCS 5/18—1 (West 1996); 720 ILCS 5/18—3, 18—4 (West 1996).

The taking by force or the threat of force is the "gist" of the offense of robbery. *People v. Strickland*, 154 Ill. 2d 489, 525, 609 N.E.2d 1366 (1992). Therefore, I believe that like the robbery statute, the "gist" of the vehicular hijacking offense is the taking of specific property, a motor vehicle, by force or the threat of force. Moreover, although the taking by force or the threat of force must be from the person or *immediate presence* of another, the statute does not require the victim to be physically present in the vehicle when the taking occurs. In order to effectuate the purpose of the statute, I would conclude that the *immediate presence* requirement is satisfied if at the time of the taking the motor vehicle is in close proximity to the victim. I would further conclude that the statutory language does not require the victim to be physically next to the vehicle at the time of the taking, which, in my opinion, is what the majority decision holds. Rather, close proximity is a measure to be determined by the jury as a question of fact. Thus, if *immediate presence* includes an area in close proximity to the victim, a jury could easily have concluded that the vehicle in this case was taken from the victim's *immediate presence*.

As the majority points out, it is well settled that in reviewing a sufficiency of the evidence claim, the pertinent inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *People v. Williams*, 118 Ill. 2d 407, 416, 515 N.E.2d 1230 (1987).

A review of the evidence in this case showed the following. The incident giving rise to these charges occurred on Sunday, May 5, 1996. Prior to May 5, 1996, the defendant, Toijuan Cooksey, and the victim, Iramie Lavizzio, had been dating for about six weeks. During that time period, Lavizzio had loaned the defendant her car on several occasions, had loaned him money and on at least one previous occasion, the defendant went with Lavizzio when she made a bank deposit for the J. Riggins clothing store where she worked. On the morning of the

incident Lavizzio left the J. Riggins store located at the River Oaks Mall to make a bank deposit. Her plan immediately after making the deposit was to pick up the defendant to give him a ride. The defendant lived a short distance from the River Oaks Mall and he had called Lavizzio at the store that morning to request a ride.

Once Lavizzio was outside the service doors of the mall, a person in a green jogging suit with a scarf around his mouth jumped from behind a garbage can. When this person jumped out in front of her, Lavizzio began running, dropped the bank deposit bag because she was afraid and immediately began yelling for help. Then Lavizzio saw the same person in the green jogging suit pick up the deposit bag. That person chased her, told her to come back and then caught up to her. The offender grabbed Lavizzio, stuck something into her back and demanded her car keys. When she turned and gave her car keys to the assailant she recognized him as Toijuan Cooksey. After she gave the defendant her car keys he pushed her and told her to run. Lavizzio did run immediately into the mall to notify security that she had just been robbed.

Another witness, Daniel Shepherd, who was in the mall parking lot at the time, heard Lavizzio scream and saw the defendant push her. He also saw the defendant run toward a burgundy car. The burgundy car Cooksey ran toward was later identified as belonging to Lavizzio. Shepherd then saw the offender get into the victim's car, get out briefly to pick something up, get back into the car and speed off. Shepherd said he was about 50 feet from the defendant and Lavizzio when he observed the occurrence. Shepherd also testified that the burgundy car was approximately 25 feet from the location where the defendant accosted Lavizzio. Shepherd said about five seconds elapsed from the time he observed the defendant push Lavizzio until the time the defendant first entered Lavizzio's car. Shepherd gave a physical description of Cooksey to the police and said the offender was wearing a green hooded jogging suit. He was also able to observe part of the victim's license plate as the offender drove away. Mr. Shepherd positively identified the defendant as the offender in a lineup a few days later.

Lavizzio identified several photographs showing the area where the property was taken. She testified that the top of exhibit 1B (which is part of record on appeal) shows where she dropped the store keys and bank deposit bag and that the same photograph shows where her car had been parked before it was taken. Lavizzio said her car was parked in the third or fourth parking space depicted on the right-hand side of the exhibit. Exhibit 1B shows where the victim's vehicle was parked in relation to the mall doors where Lavizzio was first approached by Cooksey.

Lavizzio's testimony also revealed that just one week before this incident, Cooksey went with Lavizzio when she made a bank deposit. On that morning, Lavizzio and the defendant drove her car to the same service doors of the mall. Lavizzio went in the service doors, clocked in, turned on the lights, opened the safe and got the money to make the bank deposit. Cooksey remained in the car near the service entrance at that time. Then both Lavizzio and Cooksey drove in her car to make the bank deposit. After making the deposit, Cooksey dropped Lavizzio off at the same service doors and left in her burgundy car. According to Lavizzio's testimony, Cooksey had dropped her off and picked her up at the service mall entrance on several occasions before the robbery.

The testimony also showed that the victim parted with her car keys only after the defendant demanded them from her and after the defendant thrust something into her back. Lavizzio testified on cross-examination that, immediately before the incident, her car was parked in the area near the service entrance where the defendant first approached her. In addition, according to Shepherd, Lavizzio was within 25 feet of her car when the defendant got in the car. It took only seconds for the defendant to take the car from its location and flee. The evidence also disclosed that the defendant knew her car was present at the mall parking lot because Lavizzio was going to give him a ride after she made the bank deposit. The defendant also knew that she would drive her car to the bank to make the deposit because she had done so on the previous occasion. Under all of these facts the jury could reasonably conclude that the car was taken from her *immediate presence* because it was in close proximity to her at the time of the taking. The jury could also reasonably conclude the car was taken from her person because she had actual physical control of her keys, and thus control of her car, up until the time she was forced to give up her car keys.

Although the majority finds it significant that Lavizzio was not approaching her car at the time of the taking, that she was not physically present in her car at the time of the taking, and that she was not attempting to gain entry to her car at the time of the taking, the language of the statute does not require these actions to establish *immediate presence*.

It seems clear that the purpose of this statute was to deter the forceful taking of motor vehicles from persons in and around their cars, since such situations have proven to be increasingly dangerous. As stated earlier, the language contained in the vehicular hijacking statute is almost identical to the robbery statute but for the *immediate presence* language. If the intent of the legislature was to limit the

offense of vehicular hijacking to situations where the victim was inside the vehicle, approaching the vehicle or attempting to gain entry to the vehicle instead of merely being in close proximity, the legislature could easily have done so with language to that effect.

I agree with the majority when it states that "[i]t is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses." 309 Ill. App. 3d at 846. Consequently, it was the jury's province to determine whether or not the defendant took the victim's automobile from her person or *immediate presence*. Therefore, viewing the evidence in a light most favorable to the prosecution, it is my opinion that a rational trier of fact could have found beyond a reasonable doubt that defendant took Lavizzio's vehicle from her person or *immediate presence* as the statute requires. Therefore, I dissent.