2019 IL App (1st) 162781-U
No. 1-16-2781
Order filed November 18, 2019

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

## IN THE
## APPELLATE COURT OF ILLINOIS
## FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 14 CR 19890 |
| v. | ) | |
| | ) | Honorable Timothy J. Joyce, |
| DERRICK HERNS, | ) | Judge presiding. |
| | ) | |
| Defendant-Appellant. | ) | |

PRESIDING JUSTICE GRIFFIN delivered the judgment of the court.
Justices Pierce and Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for robbery affirmed where the evidence established that he took merchandise from a store after threatening an employee with the imminent use of force.

¶ 2    Following a bench trial, defendant Derrick Herns was convicted of robbery (720 ILCS 5/18-1(a) (West 2014)) and sentenced to six years' imprisonment. On appeal, defendant argues his conviction should be reduced to theft because the State failed to prove beyond a reasonable doubt that he used or threatened the use of force during the incident. We affirm.

¶ 3     Defendant was charged with one count of armed robbery with a firearm stemming from his theft of diapers from a Dollar General store in Chicago on August 27, 2014. On that day, Tia Anderson and Erica Perkins were the only two employees working at the store, with Anderson performing duties as manager and Perkins as assistant manager and cashier. At approximately 12:30 p.m., Anderson saw defendant, whom she identified in court and had come into the store multiple times before. When she asked defendant if he needed help with anything, he accused her of following him, and stated he did not "have shit," pulled down his pants exposing "black garbage bags" at his waist, purchased one item, and left.

¶ 4     At approximately 1:40 p.m., defendant came back into the store and tapped Anderson on her shoulder to alert her to his presence. Anderson continued her duties at the front of the store. She then saw defendant walking back to the front of the store, holding a filled black garbage bag in one hand and six or seven packs of baby diapers in the other. Anderson did not see him put diapers into the bag or remove anything from any aisle, but knew the bag contained diapers because it was "busting open" at the sides and bottom of the bag and she could see the product inside.

¶ 5     Anderson asked defendant "are you really going to walk out of here like that?" Defendant responded, "[g]et the fuck out my way, B****." At the same time, defendant lifted his shirt revealing what looked to Anderson like the black handle of a gun, so she moved out of his way. Anderson had seen guns before, and believed it was a real handgun.

¶ 6     Defendant ran out of the store with the merchandise. As he passed Anderson, she pulled on his shirt, ripping it in the process, but she was not able to stop him. Anderson testified she

"wasn't thinking" when she chased him, even though she had just seen defendant show her the butt of a handgun and thought he "could have used it" on her.

¶ 7    After defendant exited the store without paying for the items, Anderson called the police and gave them defendant's description. She returned to the diaper aisle, which she had previously stocked, and saw that six packs of diapers were missing, with an approximate total value of $120. Defendant was subsequently arrested on October 15, 2014, after he stole bottles of body wash and soap from the store and Anderson and other employees followed him to an apartment building, where police arrested him.

¶ 8    The Dollar General had several security cameras which captured the August 27, 2014, incident. Video of the incident was published and subsequently entered into evidence. Anderson testified the video accurately depicted the incident. She initially stated defendant displaying the gun to her was captured on video, but subsequently acknowledged on cross-examination that it had not been captured and took place before defendant entered into range of the camera. Anderson testified defendant showed her the gun when he was 2 feet away from her at the front of the store, but later stated he did so from 8-10 feet away from her at the back of the store.

¶ 9    Our review of the relevant portion of the video shows the view from the front of the Dollar General at the time in question. Defendant enters and walks toward Anderson, who is standing in the front of the store. He walks away from the camera and disappears from view for a few minutes. He next returns holding a filled black garbage bag and walks toward the entrance. As he passes Anderson, she grabs his shirt, ripping it in the process. He continues to run toward the entrance with the bag.

¶ 10    Perkins, who was working as a cashier near the front door, saw defendant come into the store twice on August 27, 2014. She testified she saw defendant lift up his shirt, and saw "something." She did not know "what he had," but thought it could have been a gun. Perkins did not recall whether this happened during the first or second time defendant entered the store that day.

¶ 11    Chicago police officer Aaron Chappell testified that, when he arrested defendant, defendant said something to the effect of "those bitches are lying. I didn't push them. I just ran off." Chappell neither recovered a gun from defendant nor found one at the scene.

¶ 12    The court denied defendant's motion for a directed finding. The parties stipulated that, if called to testify, Detective Pulcanio would testify that on August 29, 2014, he had a conversation with Anderson who told him she confronted the offender, "who pulled up his shirt exposing what she thought was the hand grip of a handgun," and "filled the bag with diapers after exposing the handgun in his waistband and exited the store with the diapers in the bag."

¶ 13    In his closing, defendant argued the offense was, at most, shoplifting, not armed robbery. He argued Anderson was not credible due to numerous inconsistencies in her testimony regarding, *inter alia*, her role in the store that day, whether she was stocking shelves, the number of diapers taken, when defendant displayed the gun, and her actions to stop defendant, which he argued was "not the way somebody would react if there was a gun they had seen and that they were afraid that somebody would use."

¶ 14    The court found defendant guilty of the lesser-included offense of robbery. In ruling, the court emphasized that it believed the testimony of Anderson, Perkins and Chappell, and "particularly" found Anderson's testimony believable. The court found the "slight impeachment"

regarding when the gun was displayed to be "of no moment." The court believed Anderson's testimony that defendant displayed an item in his waistband, but found the testimony insufficient to prove that he had an actual firearm to support an armed robbery conviction. Finding defendant took the property by threatening Anderson with an item suggesting it was a gun, thus threatening the imminent use of force, the court found him guilty of robbery.

¶ 15    The court denied defendant's motion for a new trial and sentenced him to six years' imprisonment, to be served concurrently with the sentence imposed on defendant's guilty plea to robbery stemming from the October 15, 2014, incident.

¶ 16    Defendant argues on appeal that his conviction should be reduced to theft because the State failed to prove beyond a reasonable doubt that he used or threatened the imminent use of force when taking the diapers, asserting Anderson's testimony regarding defendant's displaying a weapon was incredible, contradictory, and not supported by the surveillance video.

¶ 17    The standard of review in challenging the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Belknap*, 2014 IL 117094, ¶ 67 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). The trier of fact, here the trial judge, has the responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. Accordingly, this court will not retry the evidence or substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or credibility of witnesses. *Id*. A reviewing court will not reverse a criminal conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People*

*v. Jackson*, 232 Ill. 2d 246, 281 (2009). For the following reasons, we find the evidence sufficient to support defendant's conviction.

¶ 18    To prove defendant guilty of robbery, the State needed to establish defendant knowingly took property from the person or presence of another by the use of force or by threatening the imminent use of force. 720 ILCS 5/18-1(a) (West 2014). Defendant challenges only the force or threat of force element of his conviction.

¶ 19    "A taking by the use of force or threat of force is proven where the fear of the victim was of such a nature that reason and common experience would induce a person to part with his or her property for the sake of his person." *People v. Cooksey*, 309 Ill. App. 3d 839, 849 (1999). Whether the threat of force was used is a question of fact, and thus this court "will not disturb that decision unless the evidence is so improbable or unsatisfactory as to leave a reasonable doubt of guilt." *Id.* Where a victim views a weapon, a sufficient threat of force exists to support a robbery conviction. *People v. Dennis*, 181 Ill. 2d 87, 102 (1998); *People v. Hollingsworth*, 120 Ill. App. 3d 177, 179-80 (1983) ("display of all or part of a weapon," such as a gun handle, is sufficient to lead a victim to plausibly conclude the defendant carried a gun and, thus, to demonstrate the threat of imminent use of force underlying a robbery conviction).

¶ 20    Viewing the evidence in the light most favorable to the State, we find a rational trier of fact could find beyond a reasonable doubt that defendant took merchandise from the Dollar General Store by threatening Anderson with the imminent use of force. Anderson testified that, when she confronted defendant as he began walking out of the store with unpaid merchandise, he lifted his shirt and showed her the handle of a gun. Anderson thought it was a gun, was familiar with guns, and thought defendant could use it on her, so she stepped out of his way. As the trial

court noted, defendant's display of what appeared to be a gun was clearly intended to suggest the item was, in fact a gun. A rational trier of fact could find defendant's clear communication to Anderson that he was armed with a gun by showing her the handle of what appeared to be a gun constituted a threat of imminent use of force. See *Hollingsworth*, 120 Ill. App. 3d at 179-180. The testimony of a single witness, if positive and credible, is sufficient to convict, even if contradicted by defendant. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). The trial court found Anderson credible, and we defer to that determination. *Brown*, 2013 IL 114196, ¶ 48. Thus, Anderson's testimony, standing alone, is sufficient support defendant's robbery conviction. *Siguenza-Brito*, 235 Ill. 2d at 228.

¶ 21    Nevertheless, defendant argues his robbery conviction should be reduced to theft as the State failed to prove he used force or threat of force. If no force or threat of force is used in a taking, the act is a theft, not a robbery. 720 ILCS 5/16-1(a)(1) (West 2014); *People v. Gilliam*, 172 Ill. 2d 484, 507 (1996). Specifically, defendant argues Anderson's testimony regarding his displaying the gun was inconsistent and contradicted by the surveillance video. He points out Anderson's testimony regarding when defendant showed her the gun varied, and that she changed her testimony when confronted with the video. He also claims Anderson's actions in trying to prevent him from leaving the store were at odds with how a reasonable person would behave if shown a gun.

¶ 22    Initially, we note that defendant argued these points in his closing argument at trial. The trial court observed the testimony of the witnesses, reviewed the video evidence, heard these same arguments and rejected them. It specifically found Anderson credible, and commented the discrepancies in her testimony regarding when she saw the gun were "of no moment." We defer

to the trial court's judgment regarding Anderson's credibility and the impact of any inconsistencies in her testimony. See *Brown*, 2013 IL 114196, ¶ 48.

¶ 23    Defendant acknowledges the positive and credible testimony of a single witness is sufficient to convict (*Siguenza-Brito*, 235 Ill. 2d at 228), and that we defer to the trial court's credibility findings (*Brown*, 2013 IL 114196, ¶ 48). He points out, however, the trial court's credibility findings are not conclusive (*People v. Smith*, 185 Ill. 2d 532, 542 (1999)), and we will reverse a conviction based upon eyewitness testimony where the testimony is "improbable, unconvincing or contrary to human experience." *People v. Ortiz*, 196 Ill. 2d 236, 267 (2001). To that end, defendant argues Anderson's testimony is too untrustworthy to believe and thus did not establish defendant used force or threat of force sufficient to sustain his robbery conviction.

¶ 24    We do not find Anderson's testimony so improbable, unconvincing or contrary to human experience that defendant's conviction should be reduced to theft. Anderson never wavered in her assertion that defendant showed her the handle of a gun. While her testimony contains inconsistencies regarding when defendant showed her the gun, it was not contrary to the other evidence presented at trial. The trial court accepted Anderson's testimony that, because defendant was out of range of the camera, the surveillance video did not depict defendant lifting his shirt to show her the gun. Anderson's coworker, Perkins, corroborated her testimony that defendant lifted his shirt; Perkins saw "something" when he did, although she could not identify what it was or when this happened**.** Further, the stipulation regarding the statement Anderson gave to Detective Pulcanio corroborates her testimony that at some point defendant showed her a gun.

¶ 25    We find nothing in the record showing that the only reasonable inference is that the questionable parts of Anderson's testimony make the whole unworthy of belief. See *People v. Cunningham*, 212 Ill. 2d 274, 284 (2004). The inconsistencies in Anderson's testimony regarding the timing of when defendant showed her the gun do not intrinsically render her testimony improbable. Minor inconsistencies in testimony between witnesses or within one witness's testimony may affect the weight of the evidence but do not automatically create reasonable doubt of guilt. *People v. Corral*, 2019 IL App (1st) 171501, ¶ 85. Again, "it is for the fact finder to judge how flaws in part of the testimony affect the credibility of the whole." *Cunningham*, 212 Ill. 2d at 283. Here, the trial court was aware of these inconsistencies and discrepancies in Anderson's testimony and was nonetheless persuaded that they did not render her testimony incredible. We find this a reasonable conclusion.

¶ 26    Defendant also argues that, when Anderson grabbed his shirt to prevent him from leaving the store, she acted "completely at odds" with what a reasonable person would do if shown a firearm, thus casting doubt on her testimony that he showed her a gun. Defendant made this argument to the trial court, asserting Anderson's actions were "not the way somebody would react if there was a gun they had seen and that they were afraid that somebody would use." The court heard Anderson's testimony regarding her chase of defendant and that she "wasn't thinking" as she chased him. It was "not required to accept any possible explanation compatible with the defendant's innocence and elevate it to the status of reasonable doubt." *Siguenza-Brito*, 235 Ill. 2d at 229. This court has previously affirmed convictions stemming from more violent struggles between armed defendants and victims. See, *e.g.*, *People v. Murray*, 194 Ill. App. 3d 653 (1990) (affirming defendant's convictions over contention that victim's version of events

was contrary to human experience where victim grappled with and restrained defendant who was armed with a knife). The court could reasonably conclude Anderson's attempt to stop defendant after he showed her the handle of what she thought was a handgun was not so contrary to human experience that it rendered her testimony incredible.

¶ 27 Taking the evidence in a light most favorable to the State, we find a rational trier of fact could have found defendant took property by threatening Anderson with the imminent use of force. Accordingly, we affirm the trial court's judgment finding defendant guilty of robbery.

¶ 28 Affirmed.