(No. 70787.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LEVI Q. BLAKE, Appellee.

*Opinion filed September 19, 1991.*

HEIPLE, J., took no part.

Neil F. Hartigan and Roland W. Burris, Attorneys General, of Springfield, and Kevin W. Lyons, State's Attorney, of Peoria (Robert J. Ruiz and Rosalyn Kaplan, Solicitors General, Terence M. Madsen and Douglas K. Smith, Assistant Attorneys General, and Kenneth R. Boyle, John X. Breslin and Rita Kennedy Mertel, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

G. Joseph Weller, Deputy Defender, and Sherry R. Engelstad, Assistant Defender, of Elgin, for appellee.

CHIEF JUSTICE MILLER delivered the opinion of the court:

Following a jury trial in the circuit court of Peoria County, the defendant, Levi Q. Blake, was convicted of armed robbery and residential burglary. The trial court entered judgment on the armed robbery conviction and sentenced defendant to 12 years' imprisonment. The appellate court, with one justice dissenting, reversed defendant's armed robbery conviction, finding insufficient proof of the elements of that offense. The appellate court remanded the cause for entry of judgment and sentencing on defendant's conviction for residential bur-

glary. (199 Ill. App. 3d 1075.) We allowed the State's petition for leave to appeal (134 Ill. 2d R. 315(a)).

The facts in this case are largely undisputed. At the time of the offenses, Mabel S., 77 years old, was a resident of Peoria. Mabel had limited vision and needed assistance with ordinary tasks. A friend, Rosemary M., 63 years old, would help Mabel perform routine chores and would often spend the night at Mabel's home. Around 11 o'clock on the evening of January 31, 1987, the women secured the house by locking the doors and then retired to separate bedrooms on the second floor.

At trial, Rosemary testified that she woke up around 6 o'clock the next morning and realized that intruders had broken into the house. She saw one man in the hallway outside her bedroom and heard him say, "I'm going in and rough her up," and she heard another man say "I'm going on in her room and have some fun." Mabel testified that she was awakened by a noise and then saw a man pushing her bedroom door open. The man fired a pistol, ransacked her bedroom, and returned to the first floor. Mabel then went to Rosemary's bedroom and found a second man holding a gun to her friend's head. The man pointed the gun at Mabel and demanded her car keys. When Mabel told him that she did not own a car, he ordered her to lie down on the floor and then struck her in the face with the gun.

One man held the women in Rosemary's bedroom at gunpoint while another man made several trips to the first floor. The women testified that at one point they heard the man who was running up and down the stairs yell to a third person. The women also heard someone downstairs respond. The women were not wearing their eyeglasses at the time of the intrusion and thus were unable to identify the assailants or describe them in detail.

Two of the intruders attempted to flee from the premises when police officers arrived at the scene. One

of the intruders, Willie James Dixon, was shot and killed in an exchange of gunfire with an officer. Willie's brother, Anthony Dixon, was captured and taken into custody. Later that day, an officer searching the attic of the house found defendant hiding inside a cardboard barrel. The defendant was then placed under arrest.

Defendant testified in his own behalf at trial, raising the defenses of compulsion and necessity. Defendant explained that he spent the day before the offenses drinking with Anthony Dixon and later smoking marijuana and drinking with Anthony and Willie Dixon. Around 3 o'clock the next morning, defendant told the Dixons that he wanted to go home. Willie suggested that the brothers would accompany defendant home if he agreed to stop first at Willie's residence. Defendant testified that he was drunk and confused at the time and that he agreed to Willie's plan because he hoped to be walked home.

According to defendant, the three men were walking past the house in question when one of the Dixons asked him if he had once lived nearby. Defendant responded affirmatively. Defendant testified that the brothers then had a conversation in a language he did not understand and afterwards jumped over the fence into the backyard. When defendant asked the Dixons what they were doing, Willie replied, "Man, we're about the money." Willie then pointed a gun at defendant and ordered him to climb over the fence. Defendant complied. The Dixons entered the house, but defendant remained outside and started to walk away. Willie then pointed a gun toward defendant and told him that he could not leave.

Defendant testified that Willie later returned with a television set, a microwave oven, and an antique clock and demanded that defendant help carry the items. When defendant hesitated, Willie asked defendant if he wanted to see the women die. Defendant then followed

Willie to a nearby garage, where they left the items. Willie later ordered defendant to accompany him inside the house. Defendant testified that he warned the Dixons when the police arrived. While the Dixons attempted to escape, defendant hid in the attic, where he was discovered later that day. At trial, defendant stated that he felt compelled to cooperate with the Dixons because of Willie's threats against both him and the women.

Defendant was charged with the offenses of home invasion, armed robbery, and residential burglary and was tried on an accountability theory. In defendant's first trial, a jury found defendant guilty of all three offenses, and the court entered judgment on the conviction for home invasion. In an earlier appeal, the appellate court reversed defendant's conviction and remanded the cause for a new trial because of an error in jury instructions. (*People v. Blake* (1988), 168 Ill. App. 3d 581.) On retrial, the jury found defendant guilty of armed robbery and residential burglary and not guilty of home invasion. The trial judge entered judgment on the armed robbery conviction and sentenced defendant to 12 years' imprisonment for that offense.

The appellate court, with one justice dissenting, reversed defendant's armed robbery conviction and remanded the cause for entry of judgment and sentencing on defendant's remaining conviction for residential burglary. The court concluded that the prosecution had failed to establish two elements of the offense of armed robbery: that the property was taken by force or the threat of force, and that the property was taken from the victims' presence. The appellate court did not believe that the women, while situated on the second floor of the residence, were in control of the items of property on the first floor that defendant was charged with taking. In addition, the court did not believe that the acts of

violence committed and threatened by the Dixons were means by which the women were forced to relinquish control over the property. (199 Ill. App. 3d at 1076-77.) The dissenting justice believed that both the force and presence elements of the offense had been established beyond a reasonable doubt and thus would have affirmed defendant's conviction for armed robbery. (199 Ill. App. 3d at 1079 (Heiple, P.J., dissenting).) We allowed the State's petition for leave to appeal (134 Ill. 2d R. 315(a)).

Armed robbery is defined by statute as the taking of property from the person or presence of another by the use of force or by threatening the imminent use of force while armed with a dangerous weapon. (Ill. Rev. Stat. 1987, ch. 38, pars. 18—1, 18—2.) "To sustain a charge of armed robbery it is essential that the robber use violence or fear of violence as the means to take property [from the person or presence] of the victim." (*People v. Tiller* (1982), 94 Ill. 2d 303, 316.) "The requirement that there be a taking 'from the person or presence' is not, however, limited to removal of the property from the victim's person or from the immediate presence of the owner, possessor or custodian." (*People v. Smith* (1980), 78 Ill. 2d 298, 302.) As we explain below, we conclude that the jury could properly find that both elements of the offense were satisfied under the circumstances shown here.

In support of the appellate court's ruling, defendant first contends that the presence element was not established in this case because the women were separated, by one level of the house, from the property taken and because the women had not been in contact with those items for some six or seven hours during the night. The defendant relies primarily on the appellate court's decision in *People v. King* (1979), 67 Ill. App. 3d 754, which reduced an armed robbery conviction to one for theft because the evidence showed that the property taken, a

purse, had been located in a room different from the one where the victim was attacked. Defendant acknowledges that the rationale of *King* has since been repudiated by the same district of the appellate court in *People v. Harris* (1990), 195 Ill. App. 3d 421, but contends that the earlier case expresses the better rule.

In Illinois, the test for presence under the robbery and armed robbery statutes is satisfied if the property taken was sufficiently within the possession or control of the person so that it can be said that violence or the threat of violence was the means by which the taking was effected. (*People v. Braverman* (1930), 340 Ill. 525, 531.) The element of presence may be shown even though the property taken was not on the victim's person or within the victim's immediate control. *People v. Smith* (1980), 78 Ill. 2d 298, 302.

In circumstances similar to these, this court and the appellate court have determined that the presence element of robbery or armed robbery may be established if the owner, possessor, or custodian of the property is on the premises at the time of the occurrence. (See *People v. Tiller* (1982), 94 Ill. 2d 303; *People v. Harris* (1990), 195 Ill. App. 3d 421; *People v. Ortiz* (1987), 156 Ill. App. 3d 170.) In the present case, we believe that the women's control and custody over the property was established at the time in question. There is nothing in the present record to suggest that the women intended to relinquish control over the property. We note that before the women retired to the second floor for the evening, they locked the doors of the home to secure themselves, the structure, and its contents from intruders. In addition, the record shows that the Dixons believed that the owner was in control of her home and all its contents. Had the Dixons believed otherwise, they would not have directly demanded the owner's car keys or used force and the threat of force to keep the women from protect-

ing the house. Under these circumstances, the fact that neither woman had been on the first floor of the home for several hours is immaterial. We conclude that because the women were in the house during the acts of violence and the taking of property, the jury could properly find that the property was taken from their presence.

Defendant also argues that the prosecution failed to establish that the property was taken by the use of force or the threat of force. Defendant contends that the acts of violence committed and threatened by the Dixons were not the means by which the property was taken from the premises. Relying on this court's decision in *People v. Tiller* (1982), 94 Ill. 2d 303, defendant maintains that the Dixons' use and threat of force was not employed for the purpose of causing the women to relinquish their property. In this regard, defendant asserts that the Dixons' intentions in entering the residence were unclear but that their purpose could have been solely to assault the women. Defendant contends further that his own actions created no additional harm or threat of harm to the women.

The defendant in *Tiller* was convicted of murder, on an accountability theory, and of armed robbery for taking the murder victim's vehicle. The defendant in that case left the scene before the murder was committed by a codefendant but later returned to take the victim's vehicle, which was parked nearby. This court reversed the defendant's armed robbery conviction, reasoning that there was no connection between the force exerted against the victim and the eventual taking of the vehicle. The court explained:

> "Taking advantage of an existing threat, where that threat was not delivered to persuade the victim to release control of property, creates no additional danger of great bodily harm. [Citations.] It is not clear from the record

what transpired in the cleaners, but there is no evidence to show that the force exerted against Miss Brown was for the purpose of depriving her of the mail truck or the mail in it. We conclude that the conviction for the armed robbery of Miss Brown must be reversed." (*Tiller*, 94 Ill. 2d at 316.)

We do not believe that the instant case is governed by *Tiller*.

In *Tiller*, the taking of the victim's vehicle was apparently an afterthought to the commission of the victim's murder. In the present case, the evidence shows that the defendant and the Dixons entered the house with the intent to burglarize it. Robbery was apparently one purpose of the Dixons' violent conduct, even if it was not the only purpose. At trial, the defendant testified that the Dixons told him they were "about the money" when the three entered the grounds of the property. Once inside the home, one man fired a pistol, ransacked the owner's bedroom, and left to search other areas of the house for valuables while another man held both women at gunpoint and hit the owner in the face with the gun. Under these circumstances, the jury could properly conclude that the Dixons' use and threat of force and the defendant's removal of the property were essentially a related series of acts. This conduct establishes the necessary concurrence of events to constitute armed robbery. (See *People v. Williams* (1987), 118 Ill. 2d 407, 416.) In the present case, the offense of armed robbery was complete when the defendant and those for whom he was accountable used force or the threat of force to cause the victims to part with possession or custody of the property against their will. See *Smith*, 78 Ill. 2d at 303.

For the reasons stated, the judgment of the appellate court is reversed. In light of its decision reversing the defendant's conviction for armed robbery, the appellate

court had declined to consider the defendant's separate challenge to the propriety of the 12-year term of imprisonment imposed for that offense. At the defendant's request, we now remand the cause to the appellate court for consideration of this additional issue.

*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded.*

JUSTICE HEIPLE took no part in the consideration or decision of this case.