COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McCullough and Senior Judge Willis
Argued at Richmond, Virginia


STANLEY GERMIAH OLIVER

MEMORANDUM OPINION[*] BY
v.        Record No. 0166-11-3                    JUDGE ROBERT P. FRANK
                                                  MARCH 13, 2012
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Charles J. Strauss, Judge

J. Patterson Rogers, 3rd, for appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Stanley Germiah Oliver, appellant, was convicted, in a jury trial, of two counts of

robbery, in violation of Code § 18.2-58, one count of armed burglary, in violation of Code

§ 18.2-89, one count of animate object sexual penetration, in violation of Code § 18.2-67.2, and

two counts of use of a firearm in the commission of a felony, in violation of Code § 18.2-53.1.

On appeal, he contends the evidence was insufficient to prove the robbery of S.S. and the use of

a firearm in connection with that robbery.  He also argues the evidence was insufficient to prove

he was one of the perpetrators of the felonies.  For the reasons stated, we affirm.

BACKGROUND

During the nighttime, appellant and two others forced entry into a single-wide trailer in

which D.C. and her twelve-year-old daughter, S.S., resided.  S.S. testified she awoke at night

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

with a gun in her face. Two men told her to walk down the hall to her mother's room.[1] S.S. testified a third individual was also in the trailer. A living room is situated between the two bedrooms.

The intruders made S.S. lie down next to her mother. They asked D.C. "where's the money and where's the drugs and all that stuff." At trial, S.S. could not identify any of the intruders because they were wearing black masks, although she testified one of the three wore gray and blue checkerboard shoes. She indicated the one with the gun was "giving all the orders." The gunman, later identified as co-defendant Chadwich Price, stayed in the bedroom with D.C. and S.S. the entire time while the other two were taking property from within the residence. The intruders took S.S.'s cell phone, iPod, and camera, all from inside her pocketbook located in the living room.[2]

D.C. testified she went to bed around 10:30 p.m. Early in the morning, she awoke to the aggressive barking of her dog. She saw someone standing in the hallway with a flashlight. That person ran toward D.C., pointed a "silverish gray" automatic gun in her face and ordered her out of bed and onto the floor. D.C. struggled with Price. One intruder brought S.S. into the room and ordered her to lie on the floor. Price had his gun pointed at D.C.'s head, yelling for her to shut up or he would kill her and her daughter. The two intruders kept asking D.C. where the pills and money were. They were telling a third person to put the "stuff" in the trunk.

Appellant asked where the key to the safe was located. D.C. said it was taped to the side of the safe. Appellant then opened and rifled through the safe.

---

[1] S.S.'s bedroom is on one end of the trailer; D.C.'s bedroom is on the other end, with the living room in between.

[2] While D.C. testified that the purse was stolen from S.S.'s bedroom, S.S. testified that it was taken from the living room. This evidentiary inconsistency bears no relevance to our analysis.

The gunman, Price, removed D.C.'s pants and underwear and penetrated her vagina with his fingers, wearing latex gloves. As D.C. remained face down, appellant digitally penetrated her vagina. S.S. remained in the room throughout the assault. After removing the stolen items from the trailer, the three men left. D.C. then notified the sheriff's department.

At trial, D.C. identified Price as one of the intruders. She identified appellant as the perpetrator who wore eyeglasses.[3] She indicated the gunman wore "bluish gray checkered print Timberland boots" and blue jeans. She said appellant wore "white sneakers," black jogging pants with a little white symbol, which looked like "a puma symbol." In court D.C. identified the Timberland boots and indicated the white sneakers and jogging pants introduced into evidence looked like the clothes one of the perpetrators wore.

D.C. testified that a number of items were stolen from her residence: lottery tickets, a carton of cigarettes removed from her automobile, pepper spray, a desktop computer, a cell phone, prescription medicine, several digital cameras, a Wii video game, a small vacuum cleaner, and cash.

The police contacted the cell phone provider to locate the stolen cell phones. After receiving certain information, Investigator Robert Worsham and other officers went to 961 Locust Drive at approximately 7:00 a.m., which was located approximately five minutes from the scene. While en route, Worsham located "two separate white gloves, rubber and latex" on the side of the road. Upon arriving at the Locust Drive address, Worsham found more latex gloves in the driveway.

A female occupant allowed Worsham into the residence. Upon entering, he noticed a bag containing white gloves similar to those found on the side of the road.

---

[3] Appellant wore eyeglasses at trial.

His investigation led to an adjacent house, the Oliver residence at 1035 Locust Drive. Officers observed a red car drive towards that house. Worsham ordered the occupants, appellant and Price, to stop, but they ran inside the trailer. After a period of time, appellant exited the trailer, and a few minutes later, Price followed. Appellant was wearing white shoes and black sweat pants with a symbol on the leg. Price was wearing checkered-style Timberland boots. At trial, D.C. identified the Timberland boots as the ones worn by Price. At trial, Lieutenant C.M. Webb testified that D.C.'s description of appellant's clothing was an "exact match."[4]

Pursuant to a consensual search, police found a portion of an audio cord inside the Oliver house and another piece of an audio cord in the yard. The piece of an audio cord in D.C.'s trailer was "physically fitted together and were at one time a single unit." The search of a bedroom also revealed a partially full bottle of Real Sangria, which D.C. identified as the bottle of wine that had been in her refrigerator. Officers also recovered a weed eater, a vacuum cleaner, a Wii fitness board, more latex gloves, and a partial carton of Marlboro Lights with the same lot number as the cigarettes found in Price's pocket. A package of Marlboros recovered from D.C.'s car matched the same lot number. D.C. identified the vacuum cleaner and Wii board as appearing similar to her property.

An expert in DNA analysis testified that both of the gloves found inside appellant's bedroom contained a mixture of D.C.'s DNA and appellant's. The second glove contained a mixture of D.C.'s DNA and that of Price.

At trial, D.C. testified the following items police recovered from the appellant's bedroom as being her property (or at least appearing similar to property stolen from her trailer):

---

[4] While D.C. described the logo as "Puma," Lieutenant Webb testified the logo was "Air Jordan," but indicated the two logos "look similar."

- 4 -

(1) pepper spray, (2) a camera, (3) a desktop computer, (4) the audio cord described above, and (5) the purple cell phone cover belonging to S.S.

## ANALYSIS

### I. Robbery and Use of Firearm

Appellant contends that since S.S.'s property was not taken from her person or in her presence, the trial court erred in convicting him of robbing S.S. and the use of a firearm in connection with that robbery. He points to the uncontroverted evidence that S.S.'s property was taken from another room while S.S. was in her mother's bedroom.[5]

"'Robbery at common law is defined as the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.'" George v. Commonwealth, 242 Va. 264, 277, 411 S.E.2d 12, 20 (1991) (quoting Pierce v. Commonwealth, 205 Va. 528, 532, 138 S.E.2d 28, 31 (1964)). The act of violence or intimidation employed must precede or be concomitant with the taking. Jones v. Commonwealth, 13 Va. App. 566, 572, 414 S.E.2d 193, 196 (1992).

In asking us to affirm, the Commonwealth relies on Bunch v. Commonwealth, 225 Va. 423, 304 S.E.2d 271 (1981). There, the victim was murdered and various items of her personal property were removed from her residence. The record did not disclose the specific location of the items within the residence prior to the theft. Bunch argued the evidence was insufficient to prove robbery since nothing proved the items were taken from the victim's person or in her presence. Id.

---

[5] Appellant also argues, in his brief, the evidence was insufficient to prove he had the requisite intent to rob S.S. This issue was not included in his assignment of error. Rule 5A:20(c) requires us to hold that this issue is waived because it is not part of appellant's assignment of error. See Winston v. Commonwealth, 51 Va. App. 74, 82, 654 S.E.2d 340, 345 (2007) (holding that because an appellant did not include an argument in his questions presented (now assignments of error), the Court would not address it on appeal); see also Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 39 n.4, 542 S.E.2d 785, 789 n.4 (2001) (declining to consider an issue on appeal because it was not "expressly stated" in the questions presented (now assignments of error)).

at 439, 414 S.E.2d at 280. The Supreme Court of Virginia rejected this argument, concluding that the phrase ""'of the personal property of another, from his person or in his presence" has been broadly construed to include the taking of property from the custody . . . or . . . the constructive possession of . . . another.'" Id. at 440, 414 S.E.2d at 281 (quoting Durham v. Commonwealth, 214 Va. 166, 168, 198 S.E.2d 603, 605-06 (1973)). The Court noted that it does not "make any difference whether, as Bunch asserts, 'the items [stolen] could have been taken from parts of the residence away from where the victim was shot.'" Id. (alteration in original).

In Clay v. Commonwealth, 30 Va. App. 254, 516 S.E.2d 684 (1999) (*en banc*), this Court discussed whether the evidence could sustain a robbery conviction where money belonging to one man was taken off of the person of another man. In that case, two men were walking from a grocery store when they were approached by Clay and another individual. Clay pointed a handgun at one victim's chest and removed the victim's coat from his person. Id. at 257, 516 S.E.2d at 685. Both victims testified that when Clay took the coat from the first man, it contained two twenty-dollar bills belonging to the second man. When Clay pointed the pistol at the first victim, the two men were standing "almost shoulder to shoulder." Id.

Clay argued at trial that the evidence was insufficient to sustain his conviction of robbing the second victim because no property was taken from the second victim's person or presence. Id. at 259, 516 S.E.2d at 686. Explaining that robbery is a common law offense, this Court stated, "'the taking must be from what is technically called the "person"; the meaning of which . . . is, not that it must be from . . . actual contact . . . [with] the person, but it is sufficient if it is from . . . [that person's] personal protection and presence.'" Id. (quoting Falden v. Commonwealth, 167 Va. 542, 546, 189 S.E. 326, 328 (1937)). The Court affirmed the robbery conviction by concluding:

> The term "in the presence" is "not so much a matter of eyesight as it is one of proximity and control: the property taken in the

robbery must be close enough to the victim and sufficiently under his control that, had the latter not been subjected to violence or intimidation by the robber, he could have prevented the taking."

Id. (quoting Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law § 8.11, at 780 (2d ed. 1986)); see also Houston v. Commonwealth, 87 Va. 257, 264, 12 S.E. 385, 387 (1890) ("[T]he taking [in a robbery] must be from what is technically called the 'person;' the meaning of which expression is, not that it must necessarily be from the actual contact of the person, but it is sufficient if it is from the personal protection and presence.").

In People v. Blake, 579 N.E.2d 861 (Ill. 1991), the Illinois Supreme Court addressed the same factual scenario as presented here. The robbery victim and another woman were in a bedroom on the second floor of her house. The victim was held at gunpoint on the second floor while other perpetrators looted the first floor of the victim's personal property. Blake argued the stolen items were not taken from the victim's presence, since she was not in control of those items located on the first floor. Id. at 863. In affirming the conviction, the Illinois Supreme Court held, "the presence element of robbery or armed robbery may be established if the owner, possessor, or custodian of the property is on the premises at the time of the occurrence." Id. at 864. The court explained that there was nothing in the facts of that case to suggest that the women, who were on the second floor, intended to relinquish control over the property on the first floor. Id. The court noted that before the women retired to the second floor for the evening, they locked the doors of the home to secure themselves, the structure, and its contents from intruders. Id. In addition, the court pointed out that the intruders believed that the owner was in control of her home and all its contents at all times. Id. Had the intruders believed otherwise, observed the court, the intruders would not have demanded the owner's car keys or used force and the threat of force to keep the women from protecting the house. The court concluded:

> Under these circumstances, the fact that neither woman had been on the first floor of the home for several hours is immaterial. We

> conclude that because the women were in the house during the acts of violence and the taking of property, the jury could properly find that the property was taken from their presence.

Id.

Guided by these principles, it is clear that "[a] robber takes property from the victim's presence if he locks or ties the victim up in one room of a building and then helps himself to valuables located in another room of the same building . . . ." 3 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 20.3(c), at 179-80 (2d ed. 2003). On the evidence before us, we find that the items taken from S.S.'s purse located in another room of the trailer were close enough to her and sufficiently under her control that, had she not been subjected to violence and intimidation by the intruders, she could have attempted to prevent the taking of her personal items. The perpetrators, through the use of violence and death threats, prevented S.S. from protecting her property located elsewhere in her residence. Because of the intruders' actions, S.S. was unable to maintain physical control of her property. Thus, we conclude that because S.S. was in the residence during the acts of violence and the taking of the property, the trial court properly found that S.S.'s property was taken from her presence. See Clay, 30 Va. App. at 259, 516 S.E.2d at 686.[6]

## II. Identity of Appellant

Appellant argues his convictions should be reversed because neither victim could identify him as one of the perpetrators. The Commonwealth responds that while there is no direct evidence pointing to appellant's identity, the record contains a wealth of circumstantial evidence proving that appellant committed the offenses charged. We agree with the Commonwealth.

---

[6] Appellant's argument that his conviction for use of a firearm in the commission of robbery should be reversed is based upon the premise that he did not rob S.S. Because we find that a robbery occurred, we also affirm appellant's conviction for use of a firearm in the commission of robbery.

When faced with a challenge to the sufficiency of the evidence, we "'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence' to support it." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)). A reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original). We ask only whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly, 41 Va. App. at 257, 584 S.E.2d at 447. "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Id. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319). Thus, we do not "substitute our judgment for that of the trier of fact" even if our opinion were to differ. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002).

"There is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence." Muhammad v. Commonwealth, 269 Va. 451, 479, 619 S.E.2d 16, 31-32 (2005), cert. denied, 547 U.S. 1136 (2006). The Virginia Supreme Court has held that "'circumstantial evidence is competent and is entitled to as much weight as direct evidence[,] provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" Finney v. Commonwealth, 277 Va. 83, 89, 671 S.E.2d 169, 173 (2009) (quoting Dowden v. Commonwealth, 260 Va. 459, 468, 536 S.E.2d 437, 441 (2000)). Furthermore, circumstantial evidence "is not viewed in isolation." Muhammad, 269 Va. at 479, 619 S.E.2d at 32. "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Id. (citation omitted).

- 9 -

The jury evaluated D.C.'s testimony and necessarily determined that her testimony was credible. They heard testimony that although Price wore a mask, D.C. described his skin tone and lips. The co-defendant's skin tone and lips matched that description. The gunman smelled of alcohol and wore distinctive Timberland boots, and when arrested a few hours after the incident, the co-defendant appeared to have been drinking heavily and he wore the distinctive Timberland boots.

D.C. identified the co-defendant, Price, at trial as the masked intruder who wore the Timberland boots. She also identified appellant's clothing as matching that worn by the second robber. D.C. identified the masks as resembling those worn by the intruders, and she identified the items recovered from appellant's bedroom as those that were stolen from her and her daughter. She also identified the severed cable found in the red car as the one from her stolen home computer.

The Commonwealth tested the two gloves recovered from appellant's bedroom and found DNA from appellant and D.C. on one of the gloves and DNA from Price and D.C. on the other latex glove. The forensic scientist testified that the chance of selecting other individuals having appellant's DNA profile was approximately one in sixteen million in the Caucasian population, one in sixteen million in the black population, and one in twenty-four million in the Hispanic population. Also, the lot number of one of the cigarette packs found in appellant's bedroom matched the lot number of a similar pack that was in D.C.'s car.

The jury believed the Commonwealth's evidence and rejected appellant's mother's testimony that appellant was at home with her during the time the crimes occurred at D.C.'s residence. There was sufficient evidence supporting the jury's decision that appellant was one of the perpetrators.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

Thus, the evidence viewed in the light most favorable to the Commonwealth proves that appellant committed the offenses charged and his convictions are affirmed.

<u>Affirmed.</u>